[No. 9182.    Department Two.    October 17, 1910.]

THE STATE OF WASHINGTON, *on the Relation of Charles E.
Shepard et al., Plaintiff,* v. THE SUPERIOR COURT FOR
KING COUNTY, *Respondent.*[1]

MANDAMUS — WHEN LIES — ELECTIONS — CERTIFICATION OF CANDI-
DATES.    Mandamus does not lie, as a matter of right, to compel the
county auditor to place the names of candidates upon a ballot until
they have been, or it is certain that they will be, certified to the
auditor.

ELECTIONS—RIGHT TO VOTE—NATURE.    While the right to vote is
a constitutional right, under Const., art. 6, § 6, providing that all
elections shall be by ballot, and that the legislature shall provide a
method of voting by secret ballot, it is subject to regulation by the
legislature in any reasonable way not prohibited.

ELECTIONS—RIGHT TO VOTE—REGULATIONS—BALLOTS—REASONABLE-
NESS.    Rem. & Bal. Code, § 4893, subd. 6, providing that no candi-
date's name shall appear on the ballot more than once, and that
the candidate, if nominated by two or more parties, may designate
the party under whose title he desires to appear, is a reasonable
regulation of the elective franchise, and violates no constitutional
right of the voter to vote for a candidate of his choice.

ELECTIONS—BALLOTS—STATUTES—IMPLIED REPEAL.    Rem. & Bal.
Code, § 4893, subd. 6, providing that the names of candidates shall
not appear on the ballot more than once, was not impliedly repealed
by the amendment of 1909 (Id., § 4842), providing that the names of
judges nominated at a joint convention of several parties shall ap-
pear on the tickets of all the parties holding the joint convention;
since there is no such conflict between the two acts as to indicate
any such legislative intent.

ELECTIONS—POLITICAL PARTIES—RIGHTS.    Political parties not be-
ing protected by the constitution, they have no constitutional right
to have their full tickets printed upon a ballot, and a law is not un-
constitutional because it tends to destroy political parties.

Certiorari to review an order of the superior court for
King county, Carey, J., entered October 11, 1910, upon sus-
taining a demurrer to the petition, dismissing an application
for a writ of mandamus to the county auditor to compel the
placing of relators' names upon an election ballot.    Affirmed.

[1] Reported in 111 Pac. 233.

*Thomas M. Vance, J. W. Robinson, W. H. B. Thomas,* and
*C. G. Heifner,* for relators.

*George F. Vanderveer* and *W. V. Tanner,* for respondent.

CHADWICK, J.—This proceeding is directed against Otto.
Case, the county auditor of King county. The question put
to this court by the relators is whether that provision of the
general election law, which reads as follows,

"No candidate's name shall appear more than once upon the
ballot: Provided, that any candidate who has been nominated
by two or more political parties may, upon a written notice
filed with the clerk of the board of county commissioners at
least twenty days before the election is to be held, designate
the political party under whose title he desires to have his.
name placed;" (Rem. & Bal. Code, § 4893, subd. 6)

violates the constitutional rights of a candidate who has been
nominated by two political parties, and is an unwarranted
interference with the rights of political parties. Relators
insist that the names of the candidates filed with the secretary
of state as the nominees of the Democratic party shall appear
under that title or designation upon the official ballot, and
the same persons being nominated by a voluntary convention
styling itself "Independent Non-Partisan Judiciary Party,"
that the same names shall likewise appear under that designa-
tion. Before proceeding to the discussion of these proposi-
tions, it may be known that technically the question is not
properly before the court, and ordinarily we would decline to.
hear a petition filed under such circumstances. It is not
shown, and in fact is not asserted, that at the time the pro-
ceeding was instituted in King county, the names of the can-
didates had been certified to the county auditor; nor is it cer-
tain that they have even now been so certified. But because
of the supposed political advantage which the relators assume.
will result to them from a decision by this court, and the pub-
lic importance of the question, we shall unhesitatingly meet
the issue.

Before proceeding to the main discussion, there is another

question which may be disposed of. The point was made in argument that the Independent Non-Partisan Judiciary Party is not in fact a political party. It may, indeed, be questioned whether a limited number of electors may gather together, and although still claiming allegiance to existing political parties, nominate candidates in opposition to them, and be a political party within any accepted definition of that term. However, having no desire to deprive relators of any right, or to enter into the discussion of even doubtful rights, we shall accept the situation as we find it. The filing having been made under the advice of the attorney general, we shall assume that the relators are the nominees of regular political parties, and will not pursue the subject further.

In determining the constitutionality of the law, there are certain fundamental principles to which we may safely recur. All laws passed by the coordinate branch of the government and approved by the executive are presumed to be constitutional, and courts will not conjure theories to overturn and overthrow the solemn declarations of the legislative body. There must be a plain violation of some provision of the fundamental law. The right to vote is a constitutional right, given by the people to certain citizens and withheld from others. But the manner in which the franchise shall be exercised is purely statutory. It is not within the power of the legislature to destroy the franchise, but it may control and regulate the ballot, so long as the right is not destroyed or made so inconvenient that it is impossible to exercise it. It follows, then, that that which does not destroy or unnecessarily impair the right must be held to be within the constitutional power of the legislature.

Bearing in mind these general principles—and they will not be challenged, it may be said also that, in almost every state which has adopted the Australian ballot system, or a modification of it, a provision similar to the one before us for construction has been adopted, and where questioned, has been sanctioned by the courts, with one exception, as a lawful and constitutional exercise of the legislative power. A law which

has been generally adopted by the legislative bodies of the
country and approved by the executive, when challenged as
unconstitutional, demands more than passing consideration;
for it cannot be presumed that the judicial department is the
only one endowed with sufficient wisdom and integrity to in-
sure the preservation of the constitutional right of the citizen.
Constitutional government by the people represents the
greatest and grandest struggle of humanity for its better-
ment, and in its accomplishment marks the uttermost political
accomplishment of the human race. The people have reserved
to themselves the general right to legislate, fixing certain
boundaries, and the province of the court is to see that the
pendulum of popular emotion does not swing beyond the limit
fixed by the people themselves in the fundamental law. There-
fore, a law comes to the courts clothed with every presump-
tion of regularity, and unless it be clear that it violates some
express provision or inherent principle of the bill of rights,
the court must give sanction to the will of the people as pres-
ently declared, and uphold the law. In this case it is not con-
tended that any constitutional right of the voter is violated;
but it is insisted that the candidate, and the political party
which is his sponsor, are denied a constitutional right; that
the voter is denied the privilege of voting for a nominee under
the party designation which represents his party principles,
while others are not so denied.

The people have purposely, and we must presume for some
reason, left details to the legislature, for the only provision
of the constitution which refers to the manner of conducting
elections is art. 6, § 6, which reads as follows:

"All elections shall be by ballot. The legislature shall pro-
vide for such method of voting as will secure to every elector
absolute secrecy in preparing and depositing his ballot."

So long, then, as the elector has a right to vote by ballot,
and the secrecy of that ballot is preserved, he cannot, nor
can the candidate, complain. A law may, in some instances,
work a hardship to the individual. In fact, all law works

hardship and inconvenience to the individual. But organized society is founded upon the principle that the convenience of the individual must give way to the common good. So long, then, as the elector has the privilege of voting for the candidate of his choice, and a way is provided, there can be no challenge of the law on constitutional grounds. Only such provisions as may in their operation shut off the voter from the ballot box will be held obnoxious to the constitutional guaranty of the right to vote. *State of New Jersey v. Black*, 54 N. J. L. 446, 24 Atl. 489, 1021, 16 L. R. A. 769.

The error of the relators' reasoning lies in assuming that an elector has an inherent right to vote in his own way, or in the manner of his choice. On the contrary, the law is,—and it is declared without division of the courts,—that the right to vote is neither a property right nor a right of person, but a mere political privilege which the legislature may regulate to any extent not prohibited by the state or Federal constitutions. 15 Cyc. 281; 10 Am. & Eng. Ency. Law (2d ed.), 568; Cooley, Const. Lim. (6th ed.), 752. See, also, the following late cases: *Riter v. Douglass* (Nev.), 109 Pac. 444; *Russell v. State ex rel. Crowder*, 171 Ind. 623, 87 N. E. 13; *Savage v. Umphries* (Tex. Civ. App.), 118 S. W. 893; *Morris v. Colorado Midland R. Co.* (Colo), 109 Pac. 430; *Healey v. Wipf*, 22 S. D. 343, 117 N. W. 521; *Coggeshall v. City of Des Moines*, 138 Iowa 730, 117 N. W. 309, 128 Am. St. 221; *State ex rel. Workman v. Goldthait* (Ind.), 87 N. E. 133; *DeWalt v. Bartley*, 146 Pa. St. 529, 24 Atl. 185, 28 Am. St. 814, 15 L. R. A. 771.

It is upon this principle that registration, laws requiring a voter to vote in the precinct of his residence, laws requiring educational or property tests, the arbitrary fixing of the times for opening and closing the polls, the difference in time during which the polls shall be kept open, and similar laws, are sustained, and upon which the right to regulate the form of the ballot must be made to rest. In *DeWalt v. Bartley*, the court, in construing a similar regulation, said:

"It was contended that the provision or discrimination against the Prohibition party is in violation of that clause of the constitution which declares that elections shall be free and equal; and also § 7, article 8, which declares that all laws regulating the holding of elections by the citizens shall be uniform throughout the state; that these constitutional provisions were intended to secure to every citizen equality in the manner of voting, and to prohibit the legislature from passing any law which shall give, directly or indirectly, an advantage to some voters, which will not equally apply to all voters. This contention is plausible, but unsound. The act does not deny to any voter the exercise of the elective franchise because he happens to be a member of a party which at the last general election polled less than 3 per cent of the entire vote cast. The provision referred to is but a regulation, and we think a reasonable one, in regard to the printing of tickets. The use of official ballots renders it absolutely necessary to make some regulations in regard to nominations, in order to ascertain what names shall be printed on the ballot. The right to vote can only be exercised by the individual voter. The right to nominate, flowing necessarily from the right to vote, can only be exercised by a number of voters acting together. Three persons may claim to be a political party, just as the three tailors of Tooley street assumed to be 'the people of England.' It follows, if an official ballot is to be used, nominations must be regulated in some way; otherwise the scheme would be impracticable, and the official ballot become the size of a blanket."

The same reasoning was pursued by this court when it sustained the direct primary law:

"From the fact that the state has assumed to provide an official ballot for the general election, it must resort to some process of selection to determine the candidates whose names shall appear upon the ballot. It cannot print the names of the entire list of electors on the ballot, nor can it print thereon the name of every elector who may choose to become a candidate. Such a proceeding would make the ballot too cumbersome for any practical purpose, and in consequence the election a farce. Since, then, the state by its legislature must resort to some process of selection, the only limitation that can be put thereon is that the process adopted be reasonable.

The legislature should not go to extremes in either direction. To print the names of every person who desires to become a candidate would be an extreme in the one direction, while to print only the names of the candidates of the party dominant at the last preceding election would be an extreme in the other. But between the extremes it is at once apparent that there is a wide field for choice, within which it cannot safely be said that the legislature has violated its just discretion. The method here adopted the court cannot say is unreasonable." *State ex rel. Zent v. Nichols,* 50 Wash. 508, 97 Pac. 728.

·The voter having, then, only such inherent right as the constitution gives, and not, as contended, such unrestrained privileges as it does not expressly deny, the main question has been met without difficulty, by reference to these general principles, by the courts of Wisconsin, Michigan, and Ohio. In *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482, 42 L. R. A. 239, it was contended that a similar statute violated that section of the constitution which provides that all votes shall be by ballot, in that it deprived the voter of a political party of his right to vote the ticket of the party to which he belonged. The court met the issue, saying:

"No reason for this contention is perceived. The word 'ballot' and the expression 'vote by ballot' had a well-understood and universal meaning at the time of the adoption of the constitution, and it must be taken as the law that the thought which was in the minds of the framers of the constitution was in harmony with such meaning. Any attempt to go outside of that would be usurpation, not interpretation or construction. It would be a method of judicial procedure that would render any legislation, however plainly worded, subject to change by judicial construction to suit the judgment of courts as to the best legislative policy. The word 'ballot' means, in the election of public officers, and always meant, a paper so prepared by printing or writing thereon as to show the voter's choice, and 'vote by ballot' the deposit of such paper in a box in such a way as to conceal the voter's choice if he so desires. In that sense and in no other the words were used in the constitution, and they secure to each person entitled to vote the rights which their meaning clearly conveys, and they are in no way

interfered with by the act under consideration. The official ballot, so called, is not complete when furnished to the elector as he enters the booth to prepare his ballot. It is a mere form for ballot. When marked and prepared by the voter so as to show his choice at the election, then, and not till then, does it become his constitutional ballot; and it is not, and cannot be, contended but that the freest opportunity practicable is given under the law for the voter to deposit such ballot so as to conceal his choice of candidates, indicated therein, if he so desires. It follows that no constitutional guaranty in regard to voting by ballot is in any way contravened."

In *Todd v. Election Commissioners*, 104 Mich. 474, 62 N. W. 564, 64 N. W. 496, 29 L. R. A. 330, the same question was resolved in the same way. Grant, Justice, who pronounced the judgment of the court, said:

"It is also insisted that the candidate has the constitutional right to have his name appear upon the ticket of every party which indorses him. It gives every candidate the right to have his name appear upon the ticket once. Naturally, it belongs in the column of that party with which he is openly affiliated; but if he chooses to have his name attached to the ticket of some other party, and that party does not object, he possesses that right. But I know of no reason or authority for saying that any candidate possesses the constitutional and inalienable right to have his name appear more than once upon the official ballot containing the tickets of two or more political parties. The Australian ballot contemplates that his name shall be there but once. It follows then that every voter has a reasonable opportunity to vote for him. This is the sole constitutional right guaranteed him. He has no occasion to find fault so long as he is permitted to have his name upon the ballot upon such ticket as he chooses, with the constitutional right following of an opportunity given to every voter to vote for him, which he can do by simply making two crosses instead of one. The law is general, and aims at no political party. One party may be affected at one election, and another at another, or all parties may be affected at one election, some in one locality and others in another. It does not prevent coalition between different political parties, which is often very commendable and patriotic. It does not deprive the members of those political parties of

the means to put their coalition into effect by their votes, but furnishes all reasonable facilities for so doing. It only requires some degree of intelligence and care on the part of the voters. We hold the law to be constitutional."

So, in Ohio, the court, in *State ex rel. Bateman v. Bode*, 55 Ohio St. 224, 45 N. E. 195, 60 Am. St. 696, 34 L. R. A. 498, held the statute to be constitutional. The whole case is covered by the following quotation:

"No form of ballot is prescribed by the constitution, and therefore the general assembly is free to adopt such form as in its judgment shall be for the best interests of the state. The election must be by ballot, but the form of the ballot, so long as it is a ballot, is left to the sound discretion of the general assembly. The ballot or ticket in question is clearly a ballot, and therefore does not contravene the second section of the fifth article of the constitution. By the second section of the first article of the constitution, it is provided, in substance, that government is instituted for the equal protection and benefit of the people. It seems clear that the placing of the name of each candidate upon the ballot once, and only once, would be equal protection and benefit to all the candidates. To place the name of one on the ballot in two places, and the name of his opponent in only one place, would not be exactly fair. It would give the candidate whose name appears twice, an advantage over the candidate whose name appears but once. So that the statute, instead of being in conflict with this section of the constitution, is in harmony with it, and may have been passed for the purpose of doing away with this advantage which existed under the former statute. It is a proper regulation of the elective franchise, well calculated to avoid and prevent corruption and fraudulent practices, as well as undue advantage to one candidate over another. But it is argued that the voters have a right to have the names appear upon both ballots, so that they may more easily vote for the candidates of their choice. No legislature and no court can know in advance how the electors desire to vote, and if an opportunity is given them to vote for the candidates of their choice, by placing the names once in plain print upon the ballots, it is all that can in fairness be required. The ballot is the same for all, and gives equal protection and benefit to all. There is no discrimination against or in favor of any one; and if any in-

equality arises, it arises not from any inequality caused by the statute, but by reason of inequalities in the persons of the voters, and such inequalities are unavoidable."

The same reason is announced in *State ex rel. Fisk v. Porter*, 13 N. D. 406, 100 N. W. 1080, 67 L. R. A. 473, the court saying most aptly:

"The legislature has declared that it shall be printed in but one column. Does this deprive the relator or the electors of any constitutional right? We think not. Counsel have failed to point out any provision of the constitution which is violated, and we know of none."

It was held in the following cases that, in the absence of a controlling statute, the names of a candidate might appear more than once on the same ballot. *Simpson v. Osborn*, 52 Kan. 328, 34 Pac. 747; *Fisher v. Dudley*, 74 Md. 242, 22 Atl. 2; *Miller v. Pennoyer*, 23 Ore. 364, 31 Pac. 830; *Payne v. Hodgson*, 34 Utah 269, 97 Pac. 132. But each of these cases turned upon statutory, and not upon constitutional grounds, and the principle we announce was thereby affirmed as completely as in the cases we have heretofore alluded to. As against the reason and logic of these decisions we have the case of *Murphy v. Curry*, 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97, holding that a similar statute was unconstitutional. This case stands alone. It was finally repudiated by a constitutional amendment. The case was decided by a divided court, a bare majority declaring the rule. The court clearly put itself in the place of the legislature and determined the law, not upon constitutional grounds, but rejected it as unwise, impolitic, and inexpedient. The case proceeded upon two false theories, as is made plain by reference to the dissenting opinion of Garoutte, Justice; the one the inconvenience of the voter, and the other the denial of a right to a political party. The writer of the dissenting opinion said:

"Here the question is simply a mere matter of regulation as to the form of the election ballot. By this provision of the law all parties are treated alike, all candidates are treated alike, and all voters are treated alike. Under those conditions

I do not see how the law can be declared unconstitutional. If the *general reasoning* found in the main opinion in this case, as well as in the Britton case, be constitutionally sound, then the whole Australian law of this state will be set aside the first time an assault upon constitutional grounds is made upon it."

The case just cited has heretofore been considered by this court. It was invoked by those who sought to overturn the direct primary law, and because of its conclusion rather than its logic, seems to be a favorite, in fact the only, weapon available to those who would thwart the attempt of the legislature to insure a ballot free of party coercion, by invoking the supposed rights of political parties. The case was repudiated as an authority in *State ex rel. Zent v. Nichols*, and, as far as the writer has been able to find, has never been approved by any of the courts of the several states.

But it nevertheless suggests the only remaining ground to be discussed, and that is that the provision of the Australian ballot law now under discussion deprives a political party of its right to appear upon the ballot. It is urged that, under subd. 3, § 4893, Rem. & Bal. Code, it is the right of every political party to print its full ticket although it contains the names of candidates appearing on other party tickets, and that this section, when considered in connection with the amendment to the direct primary law (Laws 1909, p. 179, § 11; Remington & Ballinger's Code, § 4842), which provides that the names of judges shall appear upon the ticket of all parties holding a joint convention, indicates a legislative intent to supersede or repeal subd. 6, § 4893, subd. 6, being the section which provides that names shall appear but once. The answer to this argument is that a statute will not be held to be unreasonable or in conflict with another, or repealed by implication, unless the legislative intent can be gathered from the later enactment. Courts cannot look to the working of the law or reject it because it does not affect all alike, so long as it covers all who come within its terms in the same way. The legislature having full

power, then, to make such regulations as it saw fit, the law will not be held to be repealed by implication merely because it does not cover an unforseen contingency. The legislature foresaw and covered the contingency of a joint or fusion convention, and whether it failed to legislate so as to permit the names of candidates of independent conventions or parties from going on the ballot more than once, from design or oversight, is not within the purview of our inquiry. The remedy is not to strike down the law, but to extend its operation. The remedy is in the hands of the legislature, and not to be sought in the courts.

Recurring again to fundamental principles, the whole argument in this behalf is met by the undisputed proposition that the constitution takes no concern of political parties. The people, in adopting the constitutions, both state and Federal, wisely considered that political parties are evanescent things, born of political emotions and of uncertain—sometimes precarious—tenure of life, and went no further than to protect the elector in his right to cast a ballot; not a coerced party ballot, but for the candidate of his choice, whether he be upon one ballot or another. The same argument, that such laws will tend to destroy party organizations, was made when the direct primary law was attacked two years ago, and was squarely met by this court.

"The last general objection to be noticed is that the law tends to destroy political parties. Counsel confess that they can find no specific provision of the constitution on which to base the contention, but they assert the general utility and necessity of parties, and argue therefrom that legislation tending to destroy them must receive the condemnation of the courts. It has seemed to us, however, that this is a political rather than a judicial question, and that an appeal from the legislative decision must be made to the people rather than to the courts." *State ex rel. Zent v. Nichols, supra.*

In *State ex rel. Runge v. Anderson, supra,* it was said:

"Men are supposed to stand for principles when placed in nomination by political parties, and when the candidates of

one party are identical with those of another it is supposed, and not unreasonably, that for the time being at least, though there be two organizations there is but one platform of principles, and that one party designation on the official ballot will satisfy all legitimate requirements of both. The confusion and uncertainty that would arise in such a case from the double printing of names, furnishes a strong reason for prohibiting it, and that, with the other reason mentioned, strongly support the wisdom of the prohibition as a proper legislative regulation."

Political parties being neither mentioned, protected, nor favored in the constitution, a law will not be held to be unconstitutional, although in its workings it may destroy these organizations. If a party is to be protected at all hazards, the Australian ballot, the primary law, and the commission plan of government must all fall upon the first attack, for the working, if indeed it is not the design, is to break down parties and put the burden entirely upon the elector.

"In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct from the top downwards." *People ex rel. Coffey v. Democratic General Committee*, 164 N. Y. 335, 58 N. E. 124.

See, also, *Healey v. Wipf*, 22 S. D. 343, 117 N. W. 521; *State ex rel. Van Alstine v. Frear*, 142 Wis. 320, 125 N. W. 961.

Finding no guaranty, express or implied, in favor of either a candidate or a party in the constitution, it follows that he or his party can claim no greater rights than the voter himself. The fountain cannot rise higher than its source. There being no valid constitutional objection to the statute, and being powerless to supply omissions or to whittle the law to meet conveniences or emergencies, it follows that relators must follow the law as it has been written by the legislature, and designate the name of the party under whose name they desire their names to be placed.

The judgment of the lower court is affirmed.

DUNBAR, MOUNT, and CROW, JJ., concur.

RUDKIN, C. J., presided, but took no part.