[No. 16195.  Department Two.  October 26, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Fred Hanson, Plaintiff,* v. JOHN M. WILSON, *as Judge of the Superior Court for Mason County, et al., Respondents.*[1]

ELECTIONS (33)—BALLOTS—ILLEGAL VOTES—ASSISTANCE IN MARK-ING BALLOTS—STATUTES.  Under Rem. Code, §§ 4899, 4902 and 4909, containing absolute, explicit and peremptory provisions designed to secure the secrecy and purity of the ballot, votes are illegal and can-not be counted where, in violation of the statute, the wife of a can-didate who was not a member of the election board went into the booth with six named voters and assisted the voters in preparing their ballots, without request therefor.

MOUNT, J., dissents.

Certiorari to review a judgment of the superior court for Mason county, Wilson, J., entered September 24, 1920, cancelling a certificate of nomination issued to the relator, after a hearing before the court on the merits.  Affirmed.

*Thomas M. Vance,* for relator.

*Troy & Sturdevant* and *George F. Yantis,* for respondents.

MITCHELL, J.—At the primary election held on September 14, 1920, the relator and W. A. Hunter were rival candidates for the office of county commissioner of the first district in Mason county.  The election returns showed that the relator received one hundred and

[1]Reported in 192 Pac. 913.

forty-six votes, and W. A. Hunter received one hundred and forty-three votes. The canvassing board issued a certificate of nomination to relator, authorizing his name to be placed upon the general election ballot as the republican nominee for such office. Thereupon W. A. Hunter filed in the superior court of Mason county a petition or affidavit contesting the nomination. On the return day of the citation issued on the affidavit, this relator appeared and the cause was heard on its merits. The superior court made and entered findings of fact, conclusions of law and judgment cancelling the certificate issued to Fred Hanson by the canvassing board and adjudging W. A. Hunter to be the nominee and entitled to have his name printed on the official ballot for the general election to be held on November 2, 1920. The present proceeding is brought by Fred Hanson to review the order or judgment of the superior court.

It appears that, at Skokomish precinct, in Mason county, the relator received a total of thirty-nine votes, and W. A. Hunter received a total of seven votes, for nomination for the office in question. Within the allegations of the petition in the superior court, that court found, among other things, that, during primary election day, six persons (whose names are mentioned in the findings) cast votes for relator, all six of which votes were counted for him and included in his total of thirty-nine votes in the precinct; that Mrs. Fred Hanson, who was not a member of the election board of the precinct and who is the wife of the relator, "went into the booth with and assisted in marking their ballots of each of the above named six voters, and was in the booth with each of the six voters while the said voters prepared their ballots, which ballots were cast for Fred Hanson. That no one of the said voters asked

for or received assistance from any member of the official election board for said Skokomish precinct." The trial court concluded and determined, and we think properly so, that the six votes were illegal and should not have been counted, thus leaving relator with only one hundred and forty votes, whereas W. A. Hunter had received one hundred and forty-three votes altogether in the primary election. No exceptions were taken to the findings of the trial court, which are amply sustained by the evidence which we have examined. Indeed, it is relator's contention that as there is no finding nor any proof to show other than that whatever assistance was given to the six voters by relator's wife was given at the request of the voters openly in the presence of the election board, without protest or objection from the board or any of its members, without solicitation of relator or his wife, and without influence, fraud or corruption upon or towards the six voters, that therefore the six votes were legal and proper to be counted for relator. We are satisfied, however, the approval of such contention would open wide the way to inroads upon the secrecy of the ballot and encourage evasions of plain statutory provisions essential to secure and protect the purity of elections. There is a marked difference between rejecting the total vote of a precinct because of one or more illegal votes, and the rejection of only illegal votes. The latter is the situation here.

Section 4899, Rem. Code, provides:

"On receipt of his ballot the elector shall forthwith and without leaving the polling place retire alone to one of the places, booths or apartments provided to prepare his ballot."

Section 4902, Rem. Code, provides:

"No elector, other than the one who may, because of his inability to read, or physical disability, be un-

able to mark his ballot, shall divulge to any person within the polling place the name of any candidate for whom he intends to vote or ask or receive the assistance of anyone within the polling place in the preparation of his ballot.''

Section 4909, Rem. Code, provides:

''No person shall show his ballot after it is marked to any person in such a way as to reveal the contents thereof, or the name of any candidate or candidates for whom he has marked his vote.''

Each of these rules, which by other sections of the election laws are made applicable to primary elections, was violated in the case of each of the six voters in question. The terms of the statute are absolute, explicit and peremptory; no discretion is given. They are designed to secure the secrecy and purity of the ballot, are mandatory in their character and binding upon the electors. 20 C. J., p. 182, § 223. They are statutes regulating the conduct of the voter himself for which he is responsible, and do not refer to the acts of election officers for whose conduct the voter is not responsible.

McCrary, in his work on Elections, at § 724 in the chapter on the Australian ballot system, says:

''The decisions cited in the preceding sections upon the question whether the provisions of the law are mandatory or directory are not entirely harmonious. They, however, disclose a well-defined disposition on the part of the courts to distinguish between acts to be performed by the voters, and those devolving upon the public officials charged with the conduct of the election. The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election. The

justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by, the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure so to do.''

The recent case of *Rampendahl v. Crump*, 24 Okla. 873, 105 Pac. 201, quotes the rule with approval and gives a long list of cases from different states supporting it. Other cases to the same effect are: Ann. Cases 1912 B 101, and notes; *Attorney General ex rel. Seavitt v. McQuade*, 94 Mich. 439, 53 N. W. 944; *Patterson v. Hanley*, 136 Cal. 265, 68 Pac. 821; and *Pace v. Reed*, 138 Ky. 605, 128 S. W. 891. The case of *Pace v. Reed*, just referred to, was one in which voters had been assisted in the preparation of their ballots by persons not entitled to do so, and the court said:

''The testimony shows that neither of them intended any wrong; that it was their intention only to accommodate the voters who had called upon them. Their doing so was error, however, and the votes of those five persons should not have been counted.''

In California, with similar election laws, the court, in the case of *Patterson v. Hanley, supra,* speaking of ballots prepared with the assistance of persons not authorized by the statute to do so, said:

''These votes were clearly illegal. The ballots were not made as in the act provided, and should not have been placed in the ballot box. Unless the conditions are observed upon which a voter may be assisted, there is an end to secrecy of the ballot, and all the minute provisions of the existing law having that object are worse than vain. There is, moreover, no excuse—

unless ignorance is an excuse—for a failure to observe the law regulating this matter. It was error, therefore, for the trial court to sustain the objection to appellant's offer to prove that these illegal votes were cast for the respondent."

The judgment of the trial court is affirmed.

HOLCOMB, C. J., MAIN, and TOLMAN, JJ., concur.

MOUNT, J., dissents.