[No. 43688. En Banc. July 10, 1975.]

KENNY FOULKES, *Respondent*, v. GORDON HAYS, *Appellant*.

*Malott & Southwell, P.S.,* by *Robert A. Southwell,* for appellant.

*George R. Huff* and *Joseph T. Moynihan,* for respondent.

UTTER, J.—This is an appeal from an order of the Adams County Superior Court granting respondent Kenny Foulkes' "motion to correct election fraud or error" and setting aside the results of a recount in an election for county commissioner. Appellant Gordon Hays, the winning candidate in the recount, appeals its nullification; respondent Foulkes, the winner in the original tally, cross-appeals the court's refusal to reinstate it and order of a new election. We affirm both aspects of the trial court's judgment.

Appellant Hays was the incumbent and respondent Foulkes the challenger in the November 1974 Adams County commissioner race. The first tally of votes in that contest established respondent as winner by 37 votes out of 3,025. Appellant requested a recount. The recount was held 14 days after the results of the initial count were known and resulted in appellant being declared elected by 71 votes. Almost all of the change in the results came from 12 of the 30 county precincts.

Respondent filed in superior court a timely challenge to the election results under RCW 29.65.010,[1] alleging some votes counted for appellant in the recount were marked by someone other than the voter after the original count was completed. A hearing was scheduled and on the date thereof respondent filed a "motion for order correcting election fraud or error" under RCW 29.04.030 and consolidated

---

[1]RCW 29.65.010 provides in part:

"Any registered voter may contest the right of any person declared elected to an office to be exercised in the county, district or precinct of his residence, for any of the following causes:

". . .

"(5) On account of illegal votes."

the two actions. In the trial, testimony was taken as to the procedures by which the original tally was made and the way the ballots were kept between the time of the initial balloting and that of the recount. It showed that in that interim the ballots were placed in envelopes sealed with wax. The envelopes, in turn, were locked in canvas bags with the key to each bag tied to the outside, and the bags were stored in a vault at the county auditor's office, accessible to several persons during working hours. Further testimony was heard from a document examiner called by respondent, who said that, in his opinion, 46 of 53 ballots he had selected as suspect (from all of the ballots from the 12 swing precincts) contained votes for the appellant made by someone other than the voter who marked the rest of the ballot.

After hearing this evidence, the trial court dismissed the election contest under RCW 29.65.010, holding that any ballots altered between the time of the original count and the recount were not "illegal votes" within the meaning of subsection (5) of that section. It refused, however, to dismiss respondent's "motion to correct election fraud." Additional testimony was then taken from two more experts with contradicting views on the conclusions of the first. Another document examiner, called by respondent, agreed that some ballots had been marked by two persons, though he differed with the first expert as to the legitimacy of certain ones. A graphoanalyst, one trained to determine personality traits from handwriting, called by appellant, disagreed and said that every one of the ballots from the 12 challenged precincts were marked by a single person.

On the basis of all this testimony, the court found enough ballots had been altered between the time of the original tally and the recount to change the outcome of the election. From this finding, and the fact that the keys to the padlocked sacks of ballots were accessible, it concluded the election officers had been guilty of "neglect of duty" under RCW 29.04.030 in failing to properly safeguard the ballots

from tampering. In his oral opinion, the trial judge observed

> we have the undisputed testimony in this case of the election officials that those ballots were most negligently subsequently handled. The evidence is, instead of being delivered immediately to the courthouse as the law requires, they were not, and of particular significance is the fact that the containers into which the ballots were stuffed after being counted were padlocked, but in each case the padlock had attached to it the key. A padlock with a key is no lock at all. Thus there was ample opportunity for fraudulent changes to be made, and there was, in terms of the statute, negligence on the part of the election officials that made that fraud possible.

Since the exact number of ballots which had been altered could not be ascertained, the court determined that the proper remedy for this neglect was the holding of a new election. From that determination these appeals were taken.

■ Appellant's most basic challenge is to the power of courts to inquire into the conduct of elections and order new elections to correct improprieties therein under RCW 29.04.030.[2] The broad language and murky legislative

---

[2] RCW 29.04.030 provides:

"Any justice of the supreme court, judge of the court of appeals, or judge of the superior court in the proper county shall, by order, require any person charged with error, wrongful act or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty and to do as the court orders or to show cause forthwith why the error should not be corrected, the wrongful act desisted from, or the duty or order not performed, whenever it is made to appear to such justice or judge by affidavit of an elector that:

"(1) An error or omission has occurred or is about to occur in printing the name of any candidate on official ballots; or

"(2) An error other than as provided in subsections (1) and (3) of this section has been committed or is about to be committed in printing the ballots; or

"(3) The name of any person has been or is about to be wrongfully placed upon the ballots; or

"(4) A wrongful act other than as provided for in subsections (1) and (3) of this section has been performed or is about to be performed by any election officer; or

"(5) Any neglect of duty on the part of an election officer other

history[3] of this statute show it to be a statutory recognition of the power of superior courts, acting within their general equity jurisdiction, to intervene in cases of election fraud or wrongdoing. Such jurisdiction would exist even without such recognition by virtue of Const. art. 4, § 6, unless it were "by law vested exclusively in some other court." We have upheld its exercise in quo warranto proceedings to contest election results brought completely independent of statutory remedies. *State ex rel. Morgan v. Aalgaard,* 194 Wash. 574, 78 P.2d 596 (1938); *State ex rel. Holt v. Hamilton,* 118 Wash. 91, 202 P. 971 (1921); *State ex rel. Hyland v. Peter,* 21 Wash. 243, 57 P. 814 (1899); *State ex rel. Blake v. Morris,* 14 Wash. 262, 44 P. 266 (1896); cf. *Hill v. Howell,* 70 Wash. 603, 127 P. 211 (1912) (original mandamus jurisdiction of the Supreme Court invoked to test validity of election). This authority, whether based on a specific statute or the general equity jurisdiction, carries with it "all the means to carry it into effect." RCW 2.28.150. Where appropriate, these necessary and proper powers would include the power to order a new election where no other remedy would adequately correct distortions in election results caused by fraud or neglect.[4]

---

than as provided for in subsections (1) and (3) of this section has occurred or is about to occur.

"An affidavit of an elector under subsections (1) and (3) above when relating to a primary election must be filed with the appropriate court no later than the second Friday following the closing of the filing period for nominations for such office and shall be heard and finally disposed of by the court not later than five days after the filing thereof."

[3]The relevant portions of the section, which is in the General Provisions chapter of the elections code, are based on two former sections, one limited to primary elections and one dealing only with misprinted ballots. *See* Rem. Rev. Stat. §§ 5202, 5276. The two were made unofficially consolidated by the Code Reviser, who apparently took the two acts together as creating a general power applicable to all errors in all elections. Their language was retained in 1965, when the provisions of Title 29 were formally codified. *See* Laws of 1965, ch. 9, p. 783. It has been substantially unchanged since.

[4]Similarly, the general equity jurisdiction of the federal courts has been held to include the power to void elections and order new ones in

Appellant argues, however, that the legislature has withdrawn from courts the power to hold election contests under RCW 29.04.030 or their general equity jurisdiction by enacting RCW 29.65.010. That act does, of course, govern election contests which fall within the terms of its provisions, but it does not purport to preclude actions which are outside its reach. Where the remedy provided in an election contest statute does not apply to a particular challenge and is not made exclusive, we have held that the power of a court to entertain that action under another head of its jurisdiction is unaffected. *State ex rel. Hyland v. Peter, supra.*

Here the trial court correctly ruled that RCW 29.65.010 did not apply to respondent Foulkes' claim. The only subsection of that section which is claimed to be applicable is subsection (5), which allows contests to be brought on the basis of "illegal votes." But, as the trial court held, the term "illegal votes" has been held to refer not to fraudulently altered ballots, but to votes "cast by persons not privileged to vote and votes not entitled to be counted because not cast in the manner provided by law." *Bush v. Head,* 154 Cal. 277, 97 P. 512 (1908). Washington cases in related contexts have adopted a similar definition of this and related terms. *See State ex rel. Hanson v. Wilson,* 113 Wash. 49, 51, 192 P. 913 (1920); *Hill v. Howell, supra* at 605, 610. Such a limited interpretation of this phrase here is especially appropriate in light of RCW 29.65.090, which requires a person alleging illegal voting in a statutory election contest to provide the court with the names of those who cast them. In a situation such as the trial court found existed here, it might be impossible to show by whom the ballots were altered, though it is proven that the alteration took place. To impose a requirement that an election contestant produce a "smoking gun" to obtain relief in such circumstances would deprive him of relief despite the clear

cases of gross violations of the constitution. *See, e.g., Bell v. Southwell,* 376 F.2d 659 (5th Cir. 1967); *Coalition for Education v. Board of Elections,* 370 F. Supp. 42 (S.D.N.Y. 1974).

merits of his claim that the election was invalid. RCW 29.65.010 therefore did not apply, and the trial court correctly proceeded under the alternative authority provided it by RCW 29.04.030.

■ Appellant next argues that the motion to correct election fraud the trial court granted was not timely filed under RCW 29.65.020. That statute requires that "[t]o commence an election contest, the contestant must file . . . a verified written statement of contest within ten days after the person whose right is being contested has been declared elected . . ." But its language and location indicate that it is applicable only to actions brought under RCW 29.65. RCW 29.04.030, under which this motion was brought, contains no such time limitation in nonprimary elections. The sole restriction on delay in contesting such elections under that section is provided by the equitable doctrine of laches. *LaVergne v. Boysen*, 82 Wn.2d 718, 513 P.2d 547 (1973). In *LaVergne*, at page 721, we held an action barred where "injury, prejudice or disadvantage to the defendant" resulted from the plaintiff's delay. Here there was no inordinate delay, appellant suffered no prejudice, and the public interest in election finality was not jeopardized. Respondent filed his affidavit under RCW 29.65.010 within 10 days after appellant was declared elected; the later-filed motion made no new allegations and produced no delay, but simply provided an alternate statute under which the court could act on his claim. In such circumstances the doctrine of laches does not apply.

■ Appellant's third challenge to the procedure by which this suit was brought is based on the fact that respondent did not name the election officials he alleged to have been neglectful of their duties as parties defendant. We have held, however, under the predecessor statute to RCW 29.04.030, that it is unnecessary to join election officials in actions within that section. *State ex rel. Pemberton v. Superior Court*, 196 Wash. 468, 83 P.2d 345 (1938). The differences between the present law and that

in force when *Pemberton* was decided provide no basis for departing from that holding. Indeed, both the present and the former language of the section give no indication it is necessary to name *anyone* as defendant in contests brought under it.

 Finally, appellant argues that the evidence adduced below was inadequate to support the holding that there had been "neglect of duty on the part of an election officer." That finding was based on the trial judge's hearing of voluminous testimony and assessment of the credibility of the various witnesses. We are disinclined to substitute our judgment for his. The extensive expert testimony provided virtually the "clear, cogent and convincing" proof of impropriety appellant argues was necessitated by respondent's allegation of fraud. It certainly amounted to substantial evidence in support of the trial court's holding that, by a preponderance of the evidence, *neglect*, not fraud, had been shown. The sole flaw in respondent's case at trial was his failure to show that the wax seals on the envelopes holding the ballots had been broken prior to the recount. Even this omission was not without an explanation: the record does not show that the seals were *not* broken, as apparently no one suspected tampering prior to the recount; and even if the seals were intact, the County Auditor testified that it would be possible to open the envelopes and reseal them without detection, though "it would be hard to do."

Respondent's cross-appeal urges us to reinstate the results of the original tally of votes and overturn the trial court's order of a new election. He provides neither authority nor sound argument for his position. The expert testimony heard below indicated it was impossible to tell exactly how many ballots had been fraudulently altered, though the number specifically identified as tainted fell short of making up appellant's margin of victory. In light of this, the trial court was correct in holding that the irregularity was such that the actual result of the voting could not be ascer-

tained and a new election should be held. It did not, therefore, abuse its equitable discretion in ordering such an election.

The order of the trial court is affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.