[No. 48803-7. En Banc. June 9, 1983.]

GOLD BAR CITIZENS FOR GOOD GOVERNMENT, ET AL, *Appellants*, v. HANK WHALEN, *Respondent*.

*Glen K. Thorsted,* for appellants.

*Russ Juckett, Prosecuting Attorney,* and *John T. Dalton, Deputy,* for respondent.

*Nicholas Wagner* on behalf of the American Civil Liberties Union, amicus curiae for appellants.

ROSELLINI, J.—Appellants, Gold Bar Citizens for Good Government and Betty Marshall, seek review of a trial order excluding evidence of voting irregularity. The case presents an issue of first impression concerning the proper interpretation of those election statutes which pertain to voting by nonresidents. We hold that the trial judge erred in granting respondent's motion in limine. We reverse and remand for action consistent with this opinion.

The case arises from the following facts:

On November 3, 1981, a general election was conducted

in Gold Bar, Washington. The election was held to select a mayor and determine city council membership. The victorious mayoral candidate won by only 7 votes out of a total of 343 cast. The five elected council members' margins of victory were between 5 and 43 votes. (See appendix.) On November 15 and 16, various registered voters challenged the validity of four votes, urging that the voters were not residents of the town at the time of the election. Respondent, Snohomish County Auditor Hank Whalen, heard the challenges and determined that two voters had registered in the wrong precinct. The two other challenges were denied.

On November 18, 1981, the respondent certified the election return results and declared the winning candidates.

On November 30, appellants filed the present action pursuant to the terms of RCW 29.65. The complaint alleged that the election results were invalid or illegal because certain voters in the election were ineligible to vote in the election, since they did not reside in the town of Gold Bar. Appellants argued that these votes were therefore illegal.

Prior to trial, appellants produced a document entitled List of Illegal Votes. The document listed 21 individuals who the appellants allege were ineligible to vote in the election. Respondent moved to exclude this evidence, urging that RCW 29.65 did not allow an election contest solely on the ground of votes by nonresidents. The trial judge agreed, granted the motion in limine and, as the list was the sole evidence of illegality, dismissed the action.

We granted direct review.

I

This case involves the interplay of several statutes governing the electoral process. RCW Title 29 contains the statutory mechanisms for challenging elections. The first method by which the public may challenge the right of an individual to vote is contained in RCW 29.59.010. That chapter specifically deals with voters who are challenged on grounds of residency. The statute provides:

Registration of a person as a voter shall be presump-

tive evidence of his right to vote at any primary or election, general or special, but any person's right to vote may be challenged at the polls and he may be required then and there to establish his right to vote: *Provided,* That challenges on grounds of residence alone initiated by a registered voter shall be offered at the office of the appropriate registration officer in the manner provided in RCW 29.10.130, 29.10.140, and 29.10.150 subject to the following conditions:

(1) Such challenge must be filed not later than sixty days prior to any primary or election, special or regular.

(2) The registered voter filing such challenge must furnish the address at which the challenged voter actually resides in order to assure that proper notice will be received by the challenged voter.

Respondent argues appellants were obligated to proceed under the terms of the above statute and that failure to do so precludes a challenge under RCW 29.65.010(5). That section, relied upon by appellants, states:

Any registered voter may contest the right of any person declared elected to an office to be issued a certificate of election for any of the following causes:

. . .

(5) On account of illegal votes.

All election contests shall proceed under RCW 29.04-.030, as now or hereafter amended.

The trial judge agreed with respondent, observing that

Mechanisms for challenging the residency of a voter are specifically provided by RCW 29.59.010–.030, RCW 29.51.050, and 29.10.130–.150. Those mechanisms not having been met by the plaintiffs, the general provisions of Chapter 29.65 RCW cannot now be applied after the election has been certified. Petitioners did not avail themselves of their legal remedy within the appropriate time span.

Conclusion of law 4.

The trial judge found a conflict would arise between RCW 29.59 and RCW 29.65 if appellants' challenge were allowed to proceed under the provisions of the latter statute.

We disagree and hold the trial court erroneously inter-

preted the relationship of these statutes. First, nothing in either statute requires a voter to bring his challenge to a nonresident voter first under the terms of RCW 29.59.

█ Furthermore, the trial judge improperly concluded that his result was required to avoid conflict between RCW 29.59.010 and 29.65.010. The trial court based its conclusion on the erroneous assumption that RCW 29.59.010, as a specific statute, precluded application of the general statute, RCW 29.65. This holding presumes that whenever two statutes govern the same area, the more specific statute preempts the general. This is not the law. Only when the two statutes conflict must the court choose between the two. As we observed in *Pearce v. G.R. Kirk Co.*, 92 Wn.2d 869, 872, 602 P.2d 357 (1979),

> The rule is that legislative enactments which relate to the same subject *and are not actually in conflict* should be interpreted so as to give meaning and effect to both, even though one statute is general in application and the other is special. Such an interpretation gives significance to both acts of the legislature.

(Citation omitted. Italics ours.) In the present case, no conflict exists between the two statutes; they are simply different, alternative remedies.

█ For instance, RCW 29.59.010 provides the mechanism to challenge a voter's right to cast a vote, while RCW 29.65.010 supplies the remedy when the improperly registered voter actually casts a vote. Viewed in this manner, the statutes simply complement each other. This result coincides with the general rule that election statutes are considered remedial and should be liberally construed. *See, e.g., Columbia River Salmon & Tuna Packers Ass'n v. Appling*, 232 Or. 230, 235, 375 P.2d 71 (1962).

Finally, the trial judge's interpretation unduly restricts the remedies available to challenge improper votes. A voter desiring to challenge an improperly registered voter's ballot could not do so unless the challenge were made 60 days in advance of the election as required by RCW 29.59. Yet, the constitution allows residents to register up to 30 days in

advance of the election. The complete voter lists are not available until after this date, thus effective challenge as to these late registrations is impossible. Also, many voters who are proper residents of a community 60 days before the election may subsequently relocate outside the community during the 60–day period. These nonresident votes would be immune from citizen challenge under the interpretation of the statutes adopted by the trial judge. We cannot agree with such a result.

## II

Respondent next argues that RCW 29.65.010(5) does not apply because a vote cast by a nonresident voter is not an "illegal vote".

Here, respondent cites *LaVergne v. Boysen,* 82 Wn.2d 718, 513 P.2d 547 (1973) for the proposition that a nonresident's vote is not an illegal vote. *LaVergne* involved a school levy election which was challenged on the ground that two voters were ineligible to vote because they were not residents of the school district. The court held that the plaintiffs had failed to bring themselves within the terms of RCW 29.04.030 for two reasons: first, the affidavits failed to identify the voters or electors as required by the statute; second, from the "bare allegation that persons residing outside the district voted, it does not follow that such was due to the errors, wrongful acts or neglect of election officials." *LaVergne,* at 720.

■ The above language, however, conflicts with a more recent case, *Foulkes v. Hays,* 85 Wn.2d 629, 537 P.2d 777 (1975). In *Foulkes,* the court noted, at page 634:

[T]he term "illegal votes" has been held to refer not to fraudulently altered ballots, but to votes "cast by persons not privileged to vote and votes not entitled to be counted because not cast in the manner provided by law." *Bush v. Head,* 154 Cal. 277, 97 P. 512 (1908). Washington cases in related contexts have adopted a similar definition of this and related terms. *See State ex rel. Hanson v. Wilson,* 113 Wash. 49, 51, 192 P. 913 (1920); *Hill v. Howell,* [70 Wash. 603, 605, 610, 127 P. 211

(1912)]. Such a limited interpretation of this phrase here is especially appropriate in light of RCW 29.65.090, which requires a person alleging illegal voting in a statutory election contest to provide the court with the names of those who cast them.

Respondent attempts to distinguish *Foulkes* by alleging that the above language is dicta which relies on cases not entirely on point. We disagree. The holding in *Foulkes* involves the proper definition of an illegal vote; thus, we cannot dismiss this statement as dicta. Moreover, even if we were so inclined, the facts of the present case, related case law and our own independent analysis of the issue would lead us to the conclusion that votes such as those cast here are illegal.

First, in the present case the nonresidency of the voter goes to the eligibility to vote for these candidates. If, as appellants allege, votes were cast by individuals who did not reside in the town of Gold Bar, the citizens of that town who were eligible to vote had their ballots diluted by those of outsiders. This our representative system of government does not allow. As the Supreme Court has observed:

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.

(Footnote omitted.) *Reynolds v. Sims,* 377 U.S. 533, 555, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964).

Also, the courts have traditionally viewed votes such as these as illegal. *See generally Foulkes v. Hays, supra; Reynolds v. Sims, supra.* Finally, we believe this interpretation of "illegal votes" comports with the common understanding of the term. Certainly, no one can seriously dispute the proposition that the citizens of Gold Bar alone are entitled to choose their town officials. Voting by those who once lived there but live there no longer is just as improper as if a lifelong resident of Seattle had cast a ballot. Each such

vote denies the voters of Gold Bar the opportunity to select who will govern them by allowing someone who will not be affected by the policies of the officials to influence that decision. Each vote is equally illegal.

■ Respondent offers an additional reason for rejecting this challenge. Relying on RCW 29.04.030(5) and (6), respondent argues the statute requires that the appellants prove either a wrongful act by an election official or that an error or omission has occurred in the issuance of a certificate of election. A fair reading of these statutes leads us to conclude that if a certificate of election has been issued based on illegal votes, an error has occurred. We hold, therefore, that appellants were entitled to proceed under those statutes.

■ Respondent's final theory for affirming the trial court is that the appellants erred by failing to join the elected officials whose status is challenged by this action. Respondent urges that since these parties are "indispensable", the action must be dismissed. Respondent's cited authority does not support his proposition and the statutes do not require such joinder. Indeed, both the present and former language of the statute give no indication it is necessary to name *anyone* as defendants in contests brought under it. *Foulkes,* at 636.

Our disposition of the above issues makes it unnecessary to reach the constitutional question of inherent jurisdiction raised by appellants. Having offered evidence which, if true, would demonstrate that the election results of November 3, 1981, would have been different,[1] appellants are entitled to a determination on the merits pursuant to the terms of RCW 29.65.010 and 29.04.030.

The case is therefore remanded for action consistent with this opinion.

---

[1] Appellants offered evidence that 21 individuals who were not entitled to had voted. The election results of three positions show margins of 21 votes or less. See appendix.

APPENDIX

EXHIBIT C

RESULTS OF NOVEMBER 3, 1981 ELECTION TOTAL VOTES

Town of Gold Bar, Mayor
| | |
|---|---|
| Leslie E. McCombs | 175 |
| Ed Grant | 168 |
| TOTAL VOTES | 343 |

Town of Gold Bar Council, Pos. 1
| | |
|---|---|
| Carl E. Straight | 182 |
| Robert A. Ledeen | 161 |
| TOTAL VOTES | 343 |

Town of Gold Bar, Pos. 2
| | |
|---|---|
| Calleene J. Olsen | 185 |
| Jack D. Williams | 157 |
| TOTAL VOTES | 342 |

Town of Gold Bar, Pos. 3
| | |
|---|---|
| James W. Blondell | 187 |
| Bertha M. Gilmore | 144 |
| TOTAL VOTES | 331 |

Town of Gold Bar, Pos. 4
| | |
|---|---|
| David Cotterill | 169 |
| Fred V. Meehan | 164 |
| TOTAL VOTES | 333 |

Town of Gold Bar, Pos. 5
| | |
|---|---|
| Olaf (Ole) M. Eriksen, Jr. | 189 |
| Robert T. Marshall | 149 |
| TOTAL VOTES | 338 |

WILLIAMS, C.J., and STAFFORD, DIMMICK, and PEARSON, JJ., concur.

DOLLIVER, J. (dissenting)—The question before the court is whether an election held on November 3, 1981, can be subject to challenge several weeks after the election on the sole issue of the residence of some of those persons voting in the election. The challenge is allowed by the majority. I disagree and thus dissent.

Although I do not share the view of the majority that this

action could be brought under RCW 29.65.010(5) rather than RCW 29.59.010, I will accept, for purposes of my dissent, the position of the majority that the action under RCW 29.65.010(5) is appropriate. I do point out, however, that the majority is in error in suggesting RCW 29.59 limits a residency challenge to 60 days before the election. While RCW 29.59.010 does limit a challenge by a *registered voter* to 60 days, the language in RCW 29.59.030 allows a challenge to an unqualified person at the time that person offers to vote. The challenge may be made "by the inspector or either of the judges, or by any *legal voter*." (Italics mine.) RCW 29.59.030. Nothing in RCW 29.59.030 limits the grounds of the challenge; thus, the challenge on the day of election on the ground of residency can be made by any legal voter in that election. *See* RCW 29.51.050. As so aptly cited by the majority,

> legislative enactments which relate to the same subject and are not actually in conflict should be interpreted so as to give meaning and effect to both, even though one statute is general in application and the other is special.

*Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 872, 602 P.2d 357 (1979).

The exact issue before the court is whether someone who is alleged several weeks after an election to be a nonresident is under the statute an "illegal" voter. The question of residency is highly technical and as is apparent from RCW Title 29 the Legislature has struggled to strike a balance between the twin values of finality in elections, *see LaVergne v. Boysen,* 82 Wn.2d 718, 513 P.2d 547 (1973), and the prevention of persons from voting who do not in fact reside in the jurisdiction in which the election is being held. No suggestion has been made by the majority that RCW 29.59, enacted by the Legislature to resolve this conflict, is constitutionally infirm.

The statute is specific. Registration shall be presumptive evidence of the registrant's right to vote. RCW 29.59.010. A challenge by a *registered* voter must take place 60 days before the election (RCW 29.59.010) or by an election

inspector, an election judge, or a *legal* voter at the election in question (RCW 29.59.030). The right of a *registered* voter to vote must be challenged in accordance with the statute. Otherwise, the presumption of valid registration ripens into an unassailable right.

The reliance by the majority on *Foulkes v. Hays,* 85 Wn.2d 629, 537 P.2d 777 (1975) is misplaced. *Foulkes* states:

> [T]he term "illegal votes" has been held to refer not to fraudulently altered ballots, but to votes "cast by persons not privileged to vote and votes not entitled to be counted because not cast in the manner provided by law."

(Citation omitted.) *Foulkes,* at 634. This begs the question. The vote is illegal only if it is cast by "persons not privileged to vote". Here, the persons whose votes are now contested were clearly "privileged to vote" and unless properly challenged as provided in the provisions of RCW 29.59 had a clear "right to vote".

What was done by those who may have been registered to vote within Gold Bar but who had resided outside Gold Bar at the time of the ballot in question may have been, in the words of the majority, "improper". Majority, at 730. This court's notions of impropriety should not, however, control voting. Voting is a right guaranteed by the constitution. Const. art. 6, § 1. Control of that right is within the power of the Legislature so long as it does not destroy or impair the right contrary to the state or federal constitutions. *See State ex rel. Shepard v. Superior Court,* 60 Wash. 370, 111 P. 233 (1910); Const. art. 6, § 6. Otherwise, it is the obligation of the court to uphold the system arrived at by the Legislature for registration and voting. If any fraudulent or criminal activity is involved, the Legislature has provided remedies and penalties under RCW 29.85. No such activity is alleged or shown here.

An election may be contested under RCW 29.65. RCW 29.65 provides the specific and exclusive grounds and procedures by which the right of a person declared elected to

office may be contested. RCW 29.65.010(5) allows a contest "[o]n account of illegal votes." The votes must be *illegal* under the statute. Surely this court, of all institutions, ought to understand persons may be penalized by their government only for what is illegal, not for what is merely claimed to be undesirable or improper.

It is clearly illegal as well as improper for someone who is a lifelong resident of Seattle to vote in Gold Bar. *See* RCW 29.85.200. While it may be improper it is equally clear it is not illegal for a validly registered voter in Gold Bar to vote in an election in Gold Bar. At the time of the election it is undisputed the voters whose residence is now being questioned were validly registered voters in Gold Bar. This valid registration continues until the registration is changed, *see* RCW 29.10, or until properly challenged, *see* RCW 29.59. Neither event occurred in this case. For this court now to hold otherwise moves the registration and election process away from being governed by law and places it within the whims, caprices, and notions of propriety held by judges.

I dissent.

UTTER, BRACHTENBACH, and DORE, JJ., concur with DOLLIVER, J.

Reconsideration denied September 27, 1983.