[Sac. No. 1625.   In Bank.—September 11, 1908.]

# GEORGE W. BUSH, Appellant, v. CHARLES M. HEAD, Respondent.

ELECTION CONTEST—OFFICE OF SUPERIOR COURT JUDGE MAY BE CON-
TESTED.—Under section 1111 of the Code of Civil Procedure, pro-
viding for a contest of the right of any person declared elected
to an office "to be exercised" in a county, city and county, city, or
any political subdivision of either, the office of judge of the superior
court is a proper subject of contest.

ID.—PROMISE NOT TO QUALIFY AS JUDGE—INELIGIBILITY OF CANDIDATE.—
A promise by a candidate for the office of judge of the superior
court not to qualify or enter upon the discharge of the duties of
such office, if elected, for the purpose of creating a vacancy in the
office, does not render the candidate ineligible to the office, within
the meaning of subdivision 2 of section 1111 of the Code of Civil
Procedure, or within the meaning of any other statutory or consti-
tutional provision.

ID.—ILLEGAL VOTES—MOTIVE OF VOTERS.—Votes cast for such a candi-
date with knowledge of such promise and for the purpose of pre-
venting the filling of the office, are not "illegal votes," within the
meaning of subdivision 4 .of that section, authorizing a contest
"on account of illegal votes." The legality or illegality of a vote,
cast by a qualified elector in the form prescribed by law, does not
depend upon the motive or purpose which may have actuated him.

ID.—PROMISE NOT TO QUALIFY UNLAWFUL INDUCEMENT TO VOTERS—
PURITY OF ELECTIONS ACT—CONTEST.—Such a promise, made by a
candidate for the office of superior judge, is inhibited by section 19
of the act of February 23, 1893, to promote the purity of elections
(Stats. 1893, p. 12), which makes it unlawful for any person to
offer to pay "any money or other valuable consideration," to induce
any voter to vote in a particular way, and is a ground of contest
under that act of the right of such candidate, if elected, to hold the
office.

ID.—VACANCY IN OFFICE—APPOINTMENT BY GOVERNOR—PLEADING.—The
fact that the failure on the part of the person elected to qualify
would result in a vacancy, which could be filled by the governor's
appointment, does not affect the illegality of the promise, nor its
sufficiency as a basis for contesting the election. And where the
petition on the contest avers that the promise was made to induce
the electors to vote for the respondent, and that it did induce them
to so vote, it cannot, on demurrer, be presumed that the contrary
is the fact.

ID.—JUDGMENT ON CONTEST—MINORITY CANDIDATE CANNOT BE DE-
CLARED ELECTED.—On a contest of the right of the person so elected

to hold the office of superior judge, he having received the highest number of legal votes at the election, the court has no authority, under section 1123 of the Code of Civil Procedure, to render any further judgment than one annulling the election. It has no power to declare elected a candidate who did not receive the highest number of the legal votes.

ID.—FAILURE OF PERSON ELECTED TO QUALIFY.—The failure of such candidate to qualify does not affect the right of an elector to maintain a contest.

APPEAL from a judgment of the Superior Court of Shasta County. J. E. Prewett, Judge presiding.

The facts are stated in the opinion of the court.

Morrison, Cope & Brobeck, and George O. Perry, for Appellant.

James E. Isaacs, and W. H. Carlin, for Respondent.

SLOSS, J.—In this case, an election contest, a demurrer to the petition or "statement" was sustained. Judgment of dismissal followed, and the plaintiff appeals.

The grounds of demurrer relied on are the court's lack of jurisdiction of the subject-matter and want of facts sufficient to constitute a cause of action. The petition is in two counts, but the legal questions arising on this appeal will sufficiently appear from a single narration of the facts alleged by the plaintiff. After showing the plaintiff's right to bring the proceeding, the statement alleges that at the general election of November, 1903, the defendant, Charles M. Head, was elected a judge of the superior court of the county of Shasta for a term of six years, to begin in January, 1903. He duly qualified and entered upon the performance of the duties of the office, which he has ever since held. In March, 1905, the legislature passed, and the governor approved, an act increasing the number of judges of the superior court in the county of Shasta from one to two, and providing that the governor should appoint an additional judge in said county, who should hold office until January, 1907, his successor to be elected at the general election of November, 1906. The plaintiff, Bush, was appointed, and entered upon the discharge of the duties of judge. Prior to the election of November, 1906, a conven-

tion of the Republican Party regularly nominated him as a candidate for this office, to succeed himself. The Democratic Party also held a convention, and the respondent, Head, already an incumbent of the office of judge for the term to end in January, 1909, presented himself as a candidate, and obtained the nomination by means of promises, made to delegates and the convention, that he would, if elected, fail, neglect, and refuse to qualify or to enter upon the discharge of the duties of said office, and that thereby said office would be left without an incumbent, to the end and for the purpose of defeating and preventing the operation of the act of the legislature increasing the number of judges in said county, and that there would be saved to the delegates to said convention, and to the taxpayers of the county, the expense of paying the salary of said judgeship and of the support of said court. By reason of these illegal inducements, said convention nominated Head as the candidate of the Democratic Party for the office of judge, so created by the act of the legislature. The promise or agreement of Head not to accept the office if elected thereto, and not to qualify or enter upon the discharge of the duties of said office for the purpose and object of creating a vacancy therein and defeating the operation of the act increasing the number of judges of said superior court, was made orally and in writing by said Head to the convention, and to the citizens and electors of Shasta County. The pledge or promise of Head that he would not, if elected, qualify or occupy the office, was a matter of general knowledge among the citizens of the county, and was known to the electors thereof. At the election held on the sixth day of November, 1906, Bush, the contestant, received 1210 and Head 1561 votes. The result of the election was so found by the canvassing board, which declared Head elected. All of the electors who voted for Head did so with knowledge that he was not a candidate to fill said office, and that he would not qualify or accept said office if elected thereto. The contestant alleges, on information and belief, that more than four hundred of the electors cast their votes for Head, with actual knowledge of his agreement not to qualify for or enter upon the discharge of the duties of said office, and for the purpose of aiding and abetting him in his unlawful purpose, and of preventing and defeating the operation and effect of

said act of the legislature, and of preventing the election of a judge of the superior court thereunder.

1. Section 1111 of the Code of Civil Procedure provides for a contest of the right of any person declared elected to an office "to be exercised" in "a county, city and county, city, or . . . any political subdivision of either." It is sought to support the demurrer, in so far as it is based on .the ground of want of jurisdiction of subject-matter, by the claim that the office of judge of the superior court is not included within this classification of offices, election to which may be the subject of contest. The contention is answered by a reference to *Saunders* v. *Haynes,* 13 Cal. 145, where a statute similar in its terms to the one under discussion was held to authorize a contest of an election to the office of district judge. If the district judge, who, under the judicial system then existing, performed judicial functions in a district comprising several counties, filled an office "to be exercised within a county," there is much stronger reason for holding that the same is true in the case of a judge of the superior court, who ordinarily acts only in the county in which he is elected.

2. Section 1111 of the Code of Civil Procedure, above referred to, permits a contest for any of the following causes:—

"1. For malconduct on the part of the board of judges, or any member thereof.

"2. When the person whose right to the office is contested was not, at the time of the election, eligible to such office.

"3. When the person whose right is contested has given to any elector or inspector, judge, or clerk of the election, any bribe or reward, or has offered any such bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise, defined in title four, part one, of the Penal Code.

"4. On account of illegal votes."

Further provision for contesting elections is made by an "act to promote the purity of elections . . . etc.," approved February 23, 1893. (Stats. 1893, p. 12.) Section 12 of the act provides that "any elector of the state, or of any county, city and county, city, or of any political subdivision of either, may contest the right of any person declared elected to an office to be exercised therein for any of the causes or offenses named in this act" . . . The only causes or offenses named

in the act which can be said to have any application to the facts of this case are those specified in section 19, subdivisions 1 and 8, reading as follows: "It shall be unlawful for any person, directly or indirectly, by himself or through any other person—

"1. To pay, lend or contribute, or offer or promise to pay, lend or contribute, any money or other valuable consideration to or for any voter, or to or for any other person, to induce such voter to vote or refrain from voting at any election, or to induce any voter to vote or refrain from voting at such election or any particular person or persons, . . .

"8. To advance or pay, or cause to be paid, any money or other valuable thing to or for the use of any other person, in consideration of being selected or indorsed as the candidate of any convention, . . . for a public office," . . .

It seems clear that, if there were no statutory provision on the subject other than that contained in the Code of Civil Procedure, the statement would fall short of making out a ground of contest, unless the facts alleged bring the case within the terms of subdivision 3 of section 1111 of the Code of Civil Procedure. That subdivision 1 has no application is obvious. Nor can it be said that the promises alleged to have been made by the candidate give ground of contest for ineligibility, within the purview of subdivision 2. The constitution, the Political Code, and the Code of Civil Procedure contain various provisions defining the elements of eligibility to judicial and other office (Const., art. IV, secs. 18, 20, 21, 35; art. VI, sec. 18; art. XX, secs. 2, 10, 11; Pol. Code, secs. 58, 841; Code Civ. Proc., secs. 156, 157, 159), but in none of these do we find any declaration that the commission of the acts here set forth shall make the party committing them ineligible. Even if the making of the promises as alleged could be held to constitute giving or offering a bribe, the constitution (art. XX, sec. 11) provides merely that laws shall be passed to exclude from office persons *convicted* of bribery. In the absence of some special provision, constitutional or statutory, to the contrary, "every elector is eligible to the office for which he is an elector." (Pol. Code, sec. 58.)

Subdivision 4, authorizing a contest "on account of illegal votes," does not cover the case here presented. The term "illegal votes," as used in this section, clearly includes votes

cast by persons not privileged to vote and votes not entitled to be counted because not cast in the manner provided by law. It is equally clear that a vote is not illegal because of the commission by the candidate or the election officers of any impropriety or offense, without the participation of the voter. These are, by subdivisions 1 and 3, made separate and distinct grounds of contest. Whether a vote, given in consequence of an agreement by an elector to exercise his franchise in a particular way, is "illegal," is a question which may be debatable. It is, however, not involved here. It is not alleged that any voter entered into an agreement with Head, or otherwise consented to be bribed. It is charged, merely, that certain electors cast their votes for Head, with knowledge of his promise, and for the purpose of preventing the execution of the legislative act and of relieving themselves of the expense of maintaining the court. Our attention is not called to any statutory provision, and we believe there is none, which makes the legality or illegality of a vote, cast by a qualified elector in the form prescribed by law, depend upon the motive or purpose which may have actuated him. So long as he had not committed any of the offenses denounced by the Penal Code or the Purity of Elections Law, any elector, as such, had an absolute right to vote for or against any candidate. An unworthy motive could not convert the exercise of this right into an illegal vote, within the meaning of the code provision under discussion. Apart from other considerations, it must be obvious that public policy, demanding, *inter alia,* the preservation of "secrecy in voting" (Const., art. II, sec. 5) would not be subserved by permitting the vote of a lawful elector, who had cast his ballot in regular manner and form, to be impeached by a judicial inquiry into the reasons which led him to cast that ballot in favor of one candidate rather than another.

The ground of contest, then, if there be any, must rest either on subdivision 3 of section 1111, or on the above-quoted provisions of the Purity of Elections Law. We need not inquire whether it falls within said subdivision 3, since we are satisfied that the act of 1893 authorizes a contest on the facts here set forth. Section 19 makes it unlawful for any person to offer or promise to pay "any money or other valuable consideration" to induce any voter to vote in a particular way.

Here the defendant made a promise in order to induce the voters to cast their ballots for him. The promise was that he would act in a way that would result in a saving of expense to the taxpayers and electors. This was a promise of a "valuable consideration." It is, of course, not every promise of pecuniary benefit to the voter that is in violation of statute. A promise by a candidate to limit the cost of maintaining an office by administering it economically is no more than an undertaking to perform his duty, and is clearly not in conflict with the statute. But the promise here made went further than this. By it the candidate held out to the voters as an inducement, not the proper and efficient administration of the office, but the destruction, at least for a time, of an office created by law. It has been held, in several well-considered cases, that a promise by a candidate to discharge the duties of the office for less than the lawful salary or compensation is contrary to public policy, as in the nature of a bribe. (McCrary on Elections, sec. 333; *Carrothers* v. *Russell,* 53 Iowa, 346, [5 N. W. 499]; *State* v. *Purdy,* 36 Wis. 213, [17 Am. Rep. 485]; *State* v. *Collier,* 72 Mo. 13, [37 Am. Rep. 417]; *State* v. *Dustin,* 5 Or. 375, [20 Am. Rep. 746]; see, also, *Tucker* v. *Aiken,* 7 N. H. 113.) As is said in *Tucker* v. *Aiken,* 7 N. H. 113, "the direct tendency of such practice is to introduce unsuitable persons into public employment—to induce the electors to give their suffrages to him who will work cheapest instead of him who is best qualified." The principle applies fully to the case at bar, where the promise was, in effect, that the duties of the office should not be performed at all, and that there would be no expense in connection with it.

It is undoubtedly true, as is pointed out by the respondent, that the electors entertained a vain and futile hope if they believed that the office could be destroyed and left without an incumbent by means of the device sought to be employed. The failure on the part of the person elected to qualify would result in a vacancy, which could and should be filled by the governor's appointment. But this consideration does not affect the illegality of the promise made, nor its sufficiency as a basis for contesting the election. The defendant made an offer to confer a pecuniary advantage upon the voters, and they, as is alleged, believing that the advantage would be conferred, acted upon the offer. The suggestion that the

voters must be presumed to know the law, and that, so know-ing, they could not be influenced by a promise which was not possible of fulfillment, is entitled to no weight. In the face of the averment that the representation was made to in-duce the electors to vote for the respondent, and that it did induce them to so vote, it cannot, on demurrer, be presumed that the contrary is the fact.

The contest proceeds upon the theory that the contestant is entitled, 1. To have the respondent's election annulled, and, 2. To have the court declare the appellant elected. For the reasons above stated, we think the first branch of this contention well founded. But we cannot agree with the second. Under the code sections regulating election contests, the court is authorized to enter a judgment declaring the election of another person than the one returned, only where it appears that such other person "has the highest number of legal votes." (Code Civ. Proc., sec. 1123.) We have already stated that, in our opinion, the votes cast for Head, even if so cast in consequence of unlawful inducements held out to the voters, were not illegal votes. They cannot therefore be disregarded so as to make Bush the recipient of the highest number of votes. The utmost relief that could be obtained in this proceeding would be a judgment that Head's election be annulled. It is suggested that such judgment would bring about precisely the result that follows from compliance by the respondent with his promise not to qualify—namely, that there would be a vacancy, to be filled by appointment. This, however, is no reason for sustaining the demurrer. In the first place, it is not alleged and we cannot judicially know, that Head has not qualified and that he is not, in defiance of his promise, occupying the office. But, even if we assume (as is, no doubt, the fact) that Head has, by failing to qualify, left a vacancy which has been filled by the governor, his failure to qualify does not affect the right of an elector to maintain a contest. (*Sweeny* v. *Adams,* 141 Cal. 558, [75 Pac. 182].)

The judgment is reversed, with directions to the trial court to overrule the demurrer.

Angellotti, J., Shaw, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.