[Civ. No. 20453. Fourth Dist., Div. Two. Sept. 11, 1978.]

MAURICE H. JACOBSON, Plaintiff and Respondent, v.
ROGER GLIDDEN, Defendant and Appellant.

COUNSEL

Smith, Buchanan & Smith and Douglas Buchanan for Defendant and Appellant.

Maurice H. Jacobson, in pro. per., for Plaintiff and Respondent.

OPINION

GARDNER, P. J.—This appeal is brought pursuant to Elections Code[1] section 20339.[2]

In this case we hold that the erroneous placement of a voter in a precinct is not an illegality by which that voter's ballot should be rejected. In addition, we point out the complete unworkability of section 20339 and urgently suggest that the Legislature take a hard look at that section in view of the realities of judicial life.

On June 6, 1978, Jacobson, Glidden and Wilma Muth (incumbent) were candidates for the office of Supervisor, Third Supervisorial District, County of Inyo. On that date, in the Primary Election, Muth received 543 votes and Jacobson and Glidden tied with 375 votes each. An official canvas by the board of supervisors was completed on July 5, 1978, and the tie remained.

On July 10, 1978, Jacobson filed the instant action in the Inyo Superior Court, pursuant to section 20300 et seq. He contended that a sufficient number of votes were illegally cast or otherwise improper so that had such votes not been counted he would have received more votes than Glidden.

Hearing in the superior court was held August 9, 1978. At the hearing it was established that one Deryl L. McNulty at the time of the election resided in the Fourth Supervisorial District. Unbeknownst to Mr. McNulty, the registrar of voters had erroneously precincted him into the Third Supervisorial District. The result was that Mr. McNulty cast a

---

[1]All statutory references in this opinion are to the Elections Code.

[2]Section 20339: "Either party to a contest may appeal to the district court of appeal of the district where the contest is brought, if the appeal is perfected by the appellant within 10 days after the judgment of the superior court is pronounced. The appeal shall have precedence over all other appeals and shall be acted upon by the district court of appeal within 10 days after the appeal is filed."

ballot which included a vote on the candidate for the Third Supervisorial District.

The trial court specifically declined to characterize Mr. McNulty's ballot as illegal and instead termed it improperly cast. The court said: "I feel that when the Legislature in their wisdom sought to consolidate some of the election law violations that they did not foresee this particular problem, and I am going to take the position the word illegal is too confined and too narrow, and I am aware that this is more a matter of semantics than substance, but I am going to take the position that so far as this witness is concerned this was not an illegal ballot; so far as the election laws are concerned, it may well be an illegal ballot, but I am going to order that he disclose the name of the candidate for whom he cast his vote."

Over Mr. McNulty's personal objection as well as the objection of Glidden, the witness disclosed he had cast his ballot for Glidden. Thus, the court disallowed McNulty's vote and concluded that Jacobson received 375 votes and Glidden received 374 votes. The court gave judgment that Jacobson is a candidate for the Third Supervisorial District. The effect of this judgment is that the November balloting will be between Muth and Jacobson rather than between Muth, Jacobson and Glidden. (See: §§ 6611-6613.)

### DISCUSSION

Glidden appeals contending that (1) McNulty's vote was not illegal and must be counted under the Elections Code and (2) the court erred in requiring McNulty to disclose his vote.

■ Section 20304 provides: "Irregularity or improper conduct shall annul or set aside a nomination only if it appears that illegal votes in the precinct have been given to the defendant, which if taken from him, would reduce the number of his legal votes below the number of votes given to the contestant."

Thus, it is only an illegal vote which may be deducted from a candidate's tally to annul or set aside a candidate's nomination. The term "illegal" as used in section 20304 is not defined in the Elections Code. Glidden contends that illegal should be interpreted to refer to those election irregularities which are specified in other sections of the Elections Code as penal. (See: § 29100 et seq.)

It is obvious · from the wording of section 20304 that not every irregularity or impropriety is illegal. This does not, however, solve the riddle of the meaning of illegal. Unhappily, the term is fluid in our legal system and proper meaning turns upon the usage context so that on one hand it may be used as a reference to penal acts and on the other to strictly civil acts.

Contrary to Glidden's position, an illegal vote within the meaning of the Elections Code is not necessarily limited to those defects for which criminal sanctions may be imposed. (See: *Canales* v. *City of Alviso,* 3 Cal.3d 118 [89 Cal.Rptr. 601, 474 P.2d 417]; *Bush* v. *Head,* 154 Cal. 277, 281-282 [97 P. 512]; *Singletary* v. *Kelley,* 242 Cal.App.2d 611, 612 [51 Cal.Rptr. 682].) ■ We do not, however, make any final determination of the meaning of "illegal" as used in section 20304 for in 1975 the Legislature enacted present section 1515 which solves the puzzle under the peculiar circumstances of this case.

Section 1515 reads: "If the affidavit of registration of a voter is erroneously placed in a precinct, the voter may apply to the county clerk for a certificate showing the record of registration. The county clerk shall issue the voter the certificate on or before election day. Upon presentation of this certificate to the precinct board of the proper precinct, the board shall incorporate the certificate in the book of affidavits of registration and permit the voter to vote. If the voter does not obtain the certificate provided for in this section and votes in the precinct into which the affidavit of registration has been erroneously placed by the county clerk and the election is contested, the voter's ballot shall not be rejected."

Here, McNulty was erroneously placed in the wrong precinct; he did not obtain the certificate mentioned in section 1515; he voted in the precinct into which the affidavit of registration had been erroneously placed, and the election was contested. Given these circumstances, McNulty's "ballot shall not be rejected." This language is plain enough. The disqualification of McNulty's supervisorial vote was a partial rejection of his ballot which "shall not" occur according to section 1515.

■ If a doubt exists as to the meaning and effect of the relied upon portion of section 1515, it is dispelled when the language of the predecessor statute is read, i.e., former section 1562 (see: Stats. 1963, ch. 636, § 1). The pertinent portion of the former section reads: "If the voter does not obtain the certificate provided for in this

section and votes in the precinct into which he has been erroneously placed by the county clerk, and the election is contested, his vote shall not be rejected for those candidates and on those measures with respect to which he would have been entitled to vote had he voted in his proper precinct, and no inquiry shall be made as to how he voted for those candidates and on those measures."

The legislative intent clearly emerges. The "shall not be rejected" language of section 1515 is not limited but rather is all inclusive. The limitation of the former section 1562, which would have supported the lower court's action, was not reenacted into section 1515. Persuasive and dispositive is the Legislature's removal from statutory law of the limitation that the vote of one in McNulty's position shall not be rejected for those candidates and measures with respect to which the voter would have been entitled to vote if properly precincted. Under former section 1562, a vote of the type here in question could have been rejected. Not so under present section 1515.

Jacobson urges that section 1515 is not controlling because it uses the language "ballot" shall not be rejected, rather than "vote" shall not be rejected. He says that former section 1562 is *not significant* because all the Legislature has done is to change "vote" to "ballot" thus eliminating the necessity of the last two explanatory clauses of former section 1562. There is some inconsistency in his position. The language eliminated by the Legislature in the current enactment, says Jacobson, was excess verbiage. Jacobson would have us call a white cow green merely because he says it is so. The excised portions of former section 1562 are indeed significant for they served as a limitation on what could not be rejected. Now section 1515 says nothing is to be rejected. The use of the term "ballot" in section 1515 rather than "vote" as used in former section 1562 is of no aid to Jacobson for the term definitionally includes all votes cast. We find no persuasion in Jacobson's assertion that the ballot was not rejected, merely a vote disallowed. If all votes are disallowed is there still no rejection of the ballot?

Section 1515 controls and the trial court erred in rejecting McNulty's vote.

Glidden has also challenged the court-ordered disclosure of McNulty's vote. Discussion of this matter would be merely academic in light of our decision.

## TEN DAY RULE OF SECTION 20339

As indicated in footnote 2, *ante,* section 20339 provides that an appeal such as that in the instant case "shall have precedence over all other appeals and shall be acted upon by the district court of appeal within 10 days after the appeal is filed."

The section apparently supersedes the priority position of election cases given pursuant to Code of Civil Procedure section 44 which section provides in substance that appeals in contested election cases shall be given preference in hearing in the Courts of Appeal and in the Supreme Court when transferred thereto. That section provides "all such cases shall be placed on the calendar in the order of their date of issue, next after cases in which People of the State are parties."

It is obvious that prompt action is needed in the contest of a primary election. However, section 20339 is ridiculous. While there is need for prompt action, section 20339 converts prompt action to rash haste with the potential of disastrous results. As written, it demands headlong haste rather than careful deliberation on the part of the Court of Appeal.

The section uses the phrase "acted upon." The meaning of these two words becomes critical. If "acted upon" means that the court must render its decision within 10 days, a completely unworkable deadline has been set by the Legislature. This case is a good example.

Here, the appeal was filed August 15, 1978, which, under this interpretation would have required us to file our written opinion no later than August 25, 1978. However, we did not even have the luxury of 10 days in which to reach and file our decision. Under rules 1a and 1b, California Rules of Court, the notice of appeal is filed with the clerk of the superior court. That court then transmits a copy of the notice of appeal to this court. It was not until the sixth day that we received a copy of the notice of appeal. Miraculously, on the seventh day, we received the record and the opening brief. Nevertheless, if August 25, 1978, had been the decisional deadline, there would have been no opportunity for the respondent to file a brief, no opportunity for oral argument and precious little opportunity for us to write an opinion. Obviously, due process questions arise under such a procedure.

Faced with this, we concluded that the Legislature did not intend that the Court of Appeal file its opinion within ten days of the date the notice

of appeal was filed. We concluded that if the Legislature had intended such a result, it would have said so, rather than using the words "acted upon."

It is worthy of note that at the time section 20339 was adopted, there was no provision in the Rules of Court for the county clerk to give notice to the reviewing court that an appeal had been filed as is presently required by rule 1b. Prior to the existence of that rule, it was standard procedure that the reviewing court first learned of the appeal at the time the record on appeal was filed. At that time, most appellate courts thought of the filing of the record as the actual commencement of the appeal. This probably accounts for the only case we have found concerning the time limits of section 20339. In *Duncan* v. *Burke*, 234 Cal.App.2d 171, 178 [44 Cal.Rptr. 85], the court in passing, inferentially, treated the 10-day period as commencing with the filing of the record on appeal.

■ In order to make something workable of this complete statutory mish-mash, we came to the conclusion that the statutory direction was satisfied if during the 10-day period we would order the matter set on the next oral argument calendar. This may not have been the greatest statutory interpretation in judicial history but it was the best we could come up with. When, on the seventh day, we were faced with the possibility of preparing an opinion within three days without having received a brief from the respondent, we had to do something. We did. We "acted." We ordered the matter placed on the next oral argument calendar which happened to be about a week away. We told respondent to get a brief filed immediately and to ignore completely the time schedules afforded in the Rules of Court. It is rather obvious that this has been something of a jerrybuilt piece of judicial legerdemain.

The whole point of this plaintive tale is that we suggest that the Legislature take another look at section 20339 in the light of the realities of life as it exists in the court system. As the section presently reads, there has been no consideration given to the preparation of records, to briefing, to oral argument or to the constitutional requirement of a written opinion being rendered by the Court of Appeal. Actually, the superior court has more time available to it than this court has under section 20339. (See: §§ 20303, 20335, 20338.)

While speed in the judicial process is indeed a precious, if not endangered commodity, section 20339 is simply unworkable.

The judgment of the trial court is reversed and that court is directed to enter a new judgment declaring that both Jacobson and Glidden are entitled to be candidates at the General Election.

Tamura, J., and McDaniel, J., concurred.