[Civ. No. 29234. Fourth Dist., Div. Two. Nov. 22, 1982:]

LINDA PIERCE et al., Plaintiffs and Respondents, v.
JOANNE K. HARROLD, Defendant and Appellant.

DAN CHARLES DUTCHER, Plaintiff and Respondent, v.
JOANNE K. HARROLD, Defendant and Appellant.

**COUNSEL**

James R. Goff for Defendant and Appellant.

Dan Charles Dutcher, in pro. per., and for Plaintiffs and Respondents.

**OPINION**

**McDANIEL, J.**—Defendant and appellant Joanne K. Harrold, after she was elected a Judge of the Municipal Court, West Orange County Judicial District, in the June 1982 Primary Election, became the target of two election contests filed in Orange County Superior Court. These actions were consolidated for all purposes. After trial, the judgment entered ruled in favor of the contestants. It annulled the defendant's election; it prescribed that an election to fill the office vacated be conducted as part of the November 1982 General Election; and it declared that defendant was ineligible to be a candidate at that election.

The trial court determined as a matter of fact that defendant, before the election, had committed an offense as defined by section 29303 of the Elections Code which makes it a crime for a person to file a declaration of candidacy knowing that it has been made falsely. In particular, defendant declared under oath on February 23, 1982, the date she filed her declaration of candidacy, that she was then a resident of Orange County, when in fact, as found by the court, she was not. Based upon such finding, nullification of defendant's election proceeded under section 20021, subdivision (c) of the Elections Code which sets forth the grounds for contesting a *general* election.[1] The grounds recited in the statute just noted include that the defendant has committed an offense against the elective franchise as defined in division 17 of the Elections Code. Section 29303, earlier cited, is contained in division 17 and defines such an offense.

Generally speaking, appeals of judgments in election contests, where those judgments result in nullification of the election contested, are always hectic, especially when resolution of the appeal is under the gun of a soon forthcoming

---

[1]Although the events leading to this litigation occurred in connection with a primary election, we have finally construed such events as having resulted in a general election.

election made necessary by the successful contest. The one here is no exception.

Section 20339, found in that area of the Elections Code which deals with contesting *primary* elections, specifies in a backhanded way that such contests must be filed within 10 days after judgment. Here, the consolidated judgment was filed August 6, 1982. The notice of appeal was timely, having been filed August 16, 1982.

Section 20339 further prescribes that "[t]he appeal shall have precedence over all other appeals and shall be *acted upon* by the district court of appeal within 10 days after the appeal is filed." (Italics added.) Putting aside the question of whether an appeal is "filed" when the *notice of appeal* is filed, or when the *record on appeal* is filed, we gratefully proceeded here in light of *Jacobson* v. *Glidden* (1978) 84 Cal.App.3d 748, 755 [148 Cal.Rptr. 825], to "act upon" the appeal by setting the matter down for oral argument on September 1, 1982, per order filed August 19, 1982. In this connection, anyone genuinely concerned with the orderly processing of appeals of primary election contests within the confines of due process, coupled with the time constraints of section 20339, would do well to read and reflect on Justice Gardner's commentary about the 10-day rule of section 20339 found in *Jacobson* at page 754 et seq. Included in that commentary is the holding that setting the case down for oral argument amounts to "acting upon" the appeal.

The day following our calendaring order, we received and filed defendant's petition for a writ of supersedeas which prayed for "staying the order for a new limited election in November 1982, from which appellant and petitioner herein is excluded . . . ." We denied the petition.

Our reasoning in denying the petition boiled down to this. If the judgment were to be affirmed, allowing the nullification to stand, section 6612 of the Elections Code would apply. In pertinent part, that section provides that "[i]f no candidate has been elected to a nonpartisan office pursuant to Section 6611 . . . then candidates for that office at the ensuing election shall be those candidates not elected at the primary who received the next highest number of votes cast for nomination to that office, equal in number to twice the number remaining to be elected to that office . . . ." Because of the judgment herein, no candidate was elected. Otherwise, the number yet to be elected is one, and so twice that number is two. As a result, the judgment which specified that Dan Charles Dutcher and Ronald Nix appear on the November 2, 1982, ballot for this office neatly fit the statutory prescription. Again, assuming the judgment were affirmed, the electorate would have an opportunity to make a new selection both conveniently and within the conditions of an established statutory scheme.

On the other hand, if the judgment were to be reversed, the legal situation would be just as if the contest had never occurred, i.e., defendant's certificate of election would be valid. As a result, she would be entitled to the office to which she was elected in June 1982, *regardless* of anything which happened on November 2, 1982. Thus, there really was no need for supersedeas. Actually, if it had been granted and if the judgment were affirmed, it would leave the procedure for filling the vacancy still to be resolved. The main point here is that the defendant was and remains in no way prejudiced by the denial of supersedeas. Moreover, the election process generally was better served by such denial.

Otherwise, as a consequence of considering the petition for supersedeas, we gained a new perspective of the nature of the election under contest. Because defendant was apparently *elected,* even though at a primary election, it necessarily emerged that we were and are actually dealing with a general election. As a consequence of such recognition and in reliance upon *Doran* v. *Biscailuz* (1954) 128 Cal.App.2d 55, 60-61 [274 P.2d 691], and proceeding under Elections Code section 20115, we vacated the calendaring order of August 19, 1982, and set the case down for oral argument on November 3, 1982. In so doing, we also prescribed a realistic briefing schedule which would and has afforded the parties a fair opportunity to advocate their positions. This also provided the court a decent interval within which to prepare the case for decision.

In terms of timeliness, treating the contest as one directed at a general election, we noted that section 20051, subdivision (a) applied. That section requires a filing within six months, and so contestants' filings were well within such period of limitation.

Recital of the foregoing events is not directly necessary to a resolution of the issues tendered by this particular appeal. However, it seemed to us, because this kind of procedural circumstance is likely to occur again, that it would be useful to summarize how we handled it, to afford such guidance as it may be worth.

### DISCUSSION

The parties are not in agreement over the nature and extent of the issues tendered by the appeal. The defendant first contends that the trial court lacked jurisdiction to nullify the election based on a violation of section 29303 of the Elections Code. No *jurisdiction*? Defendant further contends that there was no substantial evidence to support the judgment. Otherwise, the defendant also assigns as error that she was denied due process and a fair hearing because of the trial court's "reaction" to the issues of credibility and because she was denied her assertedly statutory right to a statement of decision before judgment

was entered. Finally, defendant argues that the court further lacked jurisdiction to order an election to fill defendant's seat, purporting to base her argument on section 6612 of the Elections Code.

Contestants for their part, as to points two, three, and four noted, take essentially contrary positions. In addition, with reference to the no-substantial-evidence contention, contestants devote much ink to the standard of review properly applicable here.

In our view, the litigants have been much too prolix in defining the issues. The record plainly presents one overriding issue, and that is whether defendant has *committed an offense* against the elective franchise as such offenses are defined in division 17. If so, because the election here under contest was in legal result a general election, then the court properly proceeded under section 20021, subdivision (c) to nullify defendant's election.

With reference to the issue just defined, contestants have fairly and correctly called for application of a time-honored rule of appellate review, namely that a legal theory not advanced in the trial court will not be entertained on appeal. However, in their marshalling of authority on the point, they quote from California Jurisprudence Third that, "The rule is not based on any lack of power in the appellate court to review questions not raised below. Appellate courts have such power, but will exercise it only under exceptional circumstances." (5 Cal.Jur.3d, Appellate Review, § 480, pp. 118-119.)

Because of the sensitive nature of this case involving, as it does, the trial court's nullification of the election of a judge who received 62 percent of the votes cast, we choose to consider the issue noted, which we deem to be dispositive, even though defendant's present position on such issue was not presented to the trial court in such form and content as it has been argued here.

The primary thrust of defendant's present attack on the setting aside of her election under section 20021, subdivision (c), is that recourse to that section may be had only after the candidate whose ouster is sought has been *convicted* of an offense defined in division 17.

Essentially, defendant argues that the phrase "convicted of" should be substituted for the word "committed" in interpreting the provision. The short answer to this contention is, if the Legislature had so intended, that it would have changed the language in 1976 when section 20021 was last amended, or that it would have done so in any of the various treatments of subdivision (c) extending back to its first enactment in 1872 as part of Code of Civil Procedure section 1111.

In support of her position defendant has attempted to delve into what she characterizes as the "legislative history" of the statutory subdivision, stating at page 19 of her opening brief: "Here the legislative history of Section 29303 [*sic*][2] shows that the language 'has committed any other offenses' was meant to restate the requirement of a conviction for such offense as stated in Section 51(3) of an act to regulate elections enacted in 1850."

Defendant then cites, in part, section 51 of the 1850 statute providing for contest of an election against one who " . . . shall have been, previous to such election, convicted of an infamous crime. . . ." Proceeding to an excerpt from section 1111 of the 1872 Code of Civil Procedure, the successor to section 51, providing for contest against a candidate who "has committed any other offense against the elective franchise . . .," defendant asserts that: "The legislate [*sic*] history of the codification of Section 51(3) into Section 1111 of the Code of Civil Procedure indicates that the change was not intended to change the meaning but only to consolidate and state more simply the previous enactments."

In support of the contention she refers to two legislative reports,[3] neither of which offer any guidance in determining whether the change in language was or was not intended to alter the meaning of the provision.

A careful comparison of the entire text of both sections clearly demonstrates that defendant is incorrect in concluding that section 1111, subdivision 3 merely restates in different language the substance of section 51, subdivision 3. The two sections provide:

Section 51. "Any elector of the proper county may contest the right of any person declared duly elected to an office to be exercised in and for such county; and, also, any elector of a township may contest the right of any person declared duly elected to any office, in and for such township, for any of the following causes:

"1st. For mal-conduct on the part of the Board of Judges, or any member thereof.

"2d. When the person whose right to the office is contested was not at the time of the election eligible to such office.

---

[2]It is clear that the discussion following this statement at pages 19-23 of defendant's opening brief relates not to the various precursors of section 29303, but of 20021, subdivision (c).

[3]Report of the Joint Committee on Revision on the Code of Civil Procedure (1871-1872) Appendix to Journal of Senate and Assembly, 19th Session, volume 3, as No. 15; Report of the Commission to Revise the Laws of the State of California (1869-1870) Appendix to Journal of Assembly and Senate, 18th Session, volume 3, as No. 44. These are included in contestants' brief as appendices "A" and "B."

"3d. When the person whose right is contested shall have been, previous to such election, convicted of an infamous crime by any Court of competent jurisdiction, such conviction not having been reversed, nor such person relieved from the legal infamy of such conviction.

"4th. When the person whose right is contested, has given to any Elector or Inspector, Judge or Clerk of the election, any bribe or reward, or shall have offered any such bribe or reward for the purpose of procuring his election.

"5th. On account of illegal votes."

Section 1111. "Any elector of the county may contest the right of any person declared elected to an office to be exercised in and for such county; and, also, any elector of a township may contest the right of any person declared elected to any office in and for such township, for any of the following causes:

"1. For malconduct on the part of the Board of Judges, or any member thereof;

"2. When the person whose right to the office is contested was not, at the time of the election, eligible to such office;

"3. When the person whose right is contested has given to any elector or Inspector, Judge, or Clerk of the election, any bribe or reward, or has offered any such bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise defined in Title IV, Part I of the Penal Code;

"4. On account of illegal votes."

Examination of the two sections reveals: that the introductory paragraph and subdivisions 1, 2, 4, and 5 of the previous section 51 were incorporated almost verbatim into section 1111; that previous section 51, subdivision 3 was omitted entirely; and that previous section 51, subdivision 4 was renumbered section 1111, subdivision 3, and *expanded* to include, in addition to the election-related offenses previously contained in the section, a new class of crimes: namely those offenses against the elective franchise enumerated in the then newly enacted Penal Code of 1872.

Thus section 1111, subdivision 3 was not, as urged by defendant, merely a reenactment of previous section 51, subdivision 3, but was rather an expanded version of section 51, subdivision 4. In addition to this change, prior felony convictions not related to the election franchise were eliminated as a ground for contesting an election.

In her reply brief and through her counsel at oral argument, defendant, notwithstanding the foregoing analysis, has urged that the case of *Bush* v. *Head* (1908) 154 Cal. 277 [97 P. 512], stands for the proposition that the language of former section 1111, subdivision 3 of the Code of Civil Procedure means that before a person can be the target of an election contest, because of having *committed* an offense, such person must first have been *convicted* of that offense.

We have read and reread that case very carefully and finally are at a loss to see how it helps defendant's position here. If anything, it supports the statutory interpretation we have set forth. However, because, at oral argument, counsel for defendant was most emphatic that *Bush* supported his key argument that the trial court had no *jurisdiction* to proceed with a trial of defendant because she had suffered no prior conviction under section 29303 of the Elections Code, we shall walk through an analysis of *Bush*.

The facts are intriguing, and they demonstrate that skullduggery in connection with judicial elections is nothing new in California's history. Back in 1903 Charles M. Head took office as the superior court judge in Shasta County, to serve for a term of six years. In 1905, the Legislature passed and the Governor approved an enactment which increased the number of superior court judges in Shasta County from one to two. The election at which the new position would be filled, after an interim appointment by the Governor expired, was set for November 1906.

Plaintiff George W. Bush received the Governor's interim appointment, and before the November 1906 election he was nominated by a convention of the Republican Party as a candidate to succeed himself. Meanwhile the Democratic Party also held a convention and nominated defendant Head as its candidate in the forthcoming election, although he was an incumbent in the other judicial office which would not expire until 1909.

According to the opinion, Head obtained the Democratic nomination "by means of promises, made to delegates and the convention, that he would, if elected, fail, neglect, and refuse to qualify or to enter upon the discharge of the duties of said office, and that thereby said office would be left without an incumbent, to the end and for the purpose of defeating and preventing the operation of the act of the legislature increasing the number of judges in said county, and that there would be saved to the delegates to said convention, and to the taxpayers of the county, the expense of paying the salary of said judgeship and of the support of said court." (*Id.*, at p. 279.)

All this was done quite openly and became a matter of general knowledge among the citizens of Shasta County and particularly its voters. Whether for the foregoing reason or otherwise, Head received 1,561 votes at the November

1906 election and Bush 1,210. Head was thereafter declared to have been elected.

Plaintiff then filed an election contest by means of the verified statement prescribed by statute and alleged therein upon information and belief that more than 400 voters "cast their votes for Head, with actual knowledge of his agreement not to qualify for or enter upon the discharge of the duties of said office, . . ." (*Id.*, at p. 279.)

Head demurred and his demurrer was *sustained*. Upon dismissal of the action Bush appealed. Of interest here, the Supreme Court discusses then section 1111 of the Code of Civil Procedure and recites as grounds for an election contest, the four subdivisions already quoted in our opinion here, including: "3. When the person whose right is contested has given to any elector or inspector, judge, or clerk of the election, any bribe or reward, or has offered any such bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise, defined in title four, part one, of the Penal Code." (*Id.*, at p. 280.)

After reciting the grounds for contesting elections as contained in section 1111, the court notes that there were other provisions for contesting elections found in an act to promote the purity of elections, approved February 23, 1893. (*Id.*) Certain of those provisions, recited by the court, involved behavior which could fairly be characterized as bribery to influence the outcome of an election. (*Id.*, at p. 281.) The court then says, "It seems clear that, if there were no statutory provision on the subject other than that contained in the Code of Civil Procedure [i.e., § 1111], the statement [of contest] would fall short of making out a ground of contest, unless the facts alleged bring the case within the terms of subdivision 3 of section 1111 of the Code of Civil Procedure." (*Id.*)

Then the court turns to its exercise of confirming the suggested negative above quoted. It discounts the facts of the case before it as coming under subdivision 1. It next states, "Nor can it be said that the promises alleged to have been made by [Head] give ground of contest for *ineligibility*, within the purview of subdivision 2." (*Id.*, at p. 281, italics added.) The court then references a variety of state constitutional provisions defining eligibility for judicial and other offices. After opining that none of the acts alleged appear to have made Head ineligible for judicial office, the court then states, "[e]ven if the making of the promises as alleged could be held to constitute giving or offering a bribe, the constitution (art. XX, sec. 11) provides merely that laws shall be passed to exclude from office persons *convicted* of bribery." (*Id.*, at p. 281, original italics.)

Parenthetically, we observe that this last quoted statement of the court was made in the context of its discounting *subdivision 2* of section 1111 as specifying any ground for contest with reference to the facts alleged. Subdivision 2 provides as a cause of a contest, "When the person whose right to the office is contested was not, at the time of the election, eligible to such office." Thus, the court was saying that before bribery can rise to the dignity of making a person *ineligible* for office, as prescribed by the Constitution, the person must first be convicted of bribery. With such proposition we have no quarrel. However, *eligibility* for office in terms of constitutional qualifications is not even remotely involved in the case before us. As a consequence, *Bush* in no sense represents authority for use in the interpretation of *subdivision 3* of section 1111 now extant in the form of Election Code section 20021, subdivision (c), insofar as the portions of *Bush* thus far quoted go.

Of further interest, however, the court goes on to say, later in the opinion, that "[t]he ground of contest, then, if there be any, must rest either on subdivision 3 of section 1111, or on the above-quoted provisions of the Purity of Elections Law." (*Id.,* at p. 282.) After inclining to rely on the latter, the court proceeded to *reverse* the judgment and send the case back for trial. (*Id.,* at p. 284.) The overall result was that the wily Judge Head was going to have to go to trial and defend himself against an election contest *despite* the fact that he had *not* been first convicted of anything. (So much for *Bush* v. *Head, supra,* 154 Cal. 274.)

Finally, and further on the matter of requiring a prior conviction, it is equally significant to us, under section 20051, subdivision (a), specifying the time within which an election contest pursued under section 20021, subdivision (c), must be brought, that such contest must be commenced within six months of certification of the election results. From this it is readily apparent that the Legislature contemplated that such contests would be filed soon after the election results became known. Therefore, to make conviction of an offense a condition precedent even to initiating an election contest would represent an absurd contradiction in legislative policy. As contestants observe, "It does not require extended discussion of the realities relating to the time needed to prosecute even the least complex criminal case to compel the conclusion that the conviction requirement would render contests under . . . Section 20021(c) virtually [impossible to accomplish within the applicable statute of limitations]."

■ Based upon the foregoing analysis, we hold that contestants were within the proper legal framework in challenging defendant's election without the necessity of first waiting for her to be "convicted" under section 29303. Necessarily, in proceeding as they have, contestants were faced, as part of their case in chief, with having to prove that the defendant had "committed an offense" against the election franchise.

■ The burden of such necessity brings us to a discussion of the standard of proof which contestants had to meet in order to prevail. Defendant's position, of course, is that this issue is peripheral because no cause of action arose absent her prior conviction on some criminal charge. However, in attacking the sufficiency of the evidence to support the trial court's finding that defendant had committed an offense as defined by section 29303, defendant does argue that the standard of proof here required is necessarily "beyond a reasonable doubt."

As to this particular case, it is probably not necessary to wrestle with this issue, for the trial court, after hearing all the evidence, stated, "I am convinced beyond a reasonable doubt and to a moral certainty that [defendant] was not a resident, nor even intended to be a resident of Orange County on February 23rd, 1982, which is the date she filed her declaration of candidacy."

Even so, because, in future cases of this kind, the litigants will be vitally concerned with the burden of proof to be met, we shall address the question.

Starting first with the Evidence Code, we note that section 115 provides, " 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] *Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.*" (Italics added.) Witkin, after quoting the second paragraph of section 115, observes, "as the above quotation makes clear, unless a greater or lesser burden is imposed by statute or judicial decision, the party with the burden of proof satisfies it by a preponderance of the evidence." (Witkin, Cal. Evidence, § 208, p. 189.) Continuing with Witkin, "Even where the theory of the case [as here] involves the accusation of a crime, the burden of proving the crime . . . is met by a *preponderance of the evidence*; i.e., the high degree of proof demanded in criminal cases is not required in civil cases even on the *issue of crime* [citations]." (*Id.*, at p. 190; original italics.)

In *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316], the Supreme Court granted a hearing to determine the proper standard of proof of civil fraud. In the course of resolving that issue as requiring proof by only a preponderance of the evidence the Supreme Court observes that "it has long been settled . . . in civil cases [that] even a criminal act may be proved by a preponderance of the evidence. (*Estate of Nelson* (1923) 191 Cal. 280, 286-287. . . .)" (*Liodas* v. *Sahadi, supra,* 19 Cal.3d 278, 290, fn. 8.)

Therefore, because section 29303 does not specify any particular standard of proof, the traditional civil standard applies, i.e., proof by a preponderance of the evidence. What that degree of proof amounts to is too well established to require citation of authority or further discourse upon it.

■ Defendant next challenges the findings as not supported by substantial evidence. This is a contention frequently made but seldom successful, especially in cases tried to a court presided over, as in this case, by a very capable trial judge. Actually, in terms of the evidence, this is not even a close case.

As earlier stated, the court found that defendant was not a resident of Orange County on February 23, 1982, and that was dispositive. Here, because of the extensive public interest in cases of this kind, the court was at pains to leave no doubt as to why it reached the result it did. By this we mean that the court explained in detail the evidence relied upon. We can do no better than to quote its recital: "Her use of the Newport Beach property [543 Via Lido Soud] was occasional only, as shown by the utility bills and the phone bills. No toll calls were made in January, February through March 17th, 1982, which is coincidentally the day that Mr. Dutcher filed his statement of qualifications.

"That the gas bill for January 28th, 1982 to 2-19-82 was $7.63, $3.10 of which was a standard customer service charge to all residents.

"Others around her went from $11 to $113, plus.

"From February 19th, 1982 to March 22, 1982 the gas bill was only $7.91 with $3.10 again being a standard customer service fee, while all others around her on Via Lido Soud had substantially higher gas bills.

"Her electric bill was very low compared to after March 17, 1982, sometimes doubling.

"Mrs. Harrold's statement that she intended to live in the Newport Beach home as her residence since 1982, January, I give no weight at all.

"Her credibility has been shattered beyond repair. Her admission of untruthfulness with respect to the declarations under penalty of perjury signed March 22nd, 1982, when she indicated she was a resident of this county since 1962, when in fact she was a registered voter in Riverside and voted in Riverside in 1972 and 1974.

"Her admission in the participation of procuring a false date on the notary seal in the transfer of the grandmother's property in Newport Beach to herself.

"Her admission that she did not live at the Newport Beach address when she made application for appointment to the Municipal Court.

"The fact that she never had her principal place of residence for purposes of appointment in Orange County, but rather her home was in Riverside County.

"And, she never changed it in the entire time she was on the bench from March 1980 until some time after March 17th, 1982.

"Her bailiff even admits that he had no other phone number for her but the Riverside phone number until late March '82 or early April '82.

"That he attended parties prior to late March or April of 1982 at her Riverside home.

"Detention release had her Riverside number listed in their list of where to reach judges at home, and there's some question obviously as to when that changed.

"I therefore find that Mrs. Harrold committed the offense under 29303 of the Elections Code, and I find for the contestant and the electors."

Otherwise, we quote from contestants' brief. "A review of the trial transcript and exhibits reveals many other items of evidence which support the trial Court's conclusion as to the falsity of appellant's Declaration of Candidacy and her credibility. Among these are: the fact that appellant's home owner's exemption was still taken on her Riverside home as of July 1, 1982 . . . ; the fact that as of the date of trial the telephone and all utilities except gas at the home appellant claimed as her Newport Beach residence were in the name of her uncle, William Lansdale . . . ; the fact that as of the time of trial appellant had moved no furniture from the Riverside home she had occupied since 1977 to the Newport Beach house . . . ; the fact that appellant's car was still registered to her Riverside address as of the time of trial . . . ; the fact that appellant had in 1982 herself typed a quitclaim deed from her grandmother to herself, had backdated it November 30, 1981, had it signed by her grandmother in 1982, had procured notarization indicating the deed had been signed November 30, 1981 and had procured recordation of the deed by her husband, coupled with the fact that at the trial the Notary invoked the Fifth Amendment in refusing to testify about the transaction . . . ; appellant's testimony that her failure to comply with a subpoena duces tecum of checks showing payment of utility bills in 1982 was due to the fact that her husband destroys the cancelled checks . . . ; and appellant's explanation as to why telephone records covering January' through June, 1982 at the Newport Beach house showed no toll calls prior to March 18, 1982 and many such calls from then on through June that she sometimes used a credit card or called collect from her own home. . . . [¶] It is

submitted that the evidence outlined above unquestionably constituted substantial evidence in support of the trial Court's finding appellant violated Election Code Section 29303."

It would be hard to imagine a more conclusive case in terms of substantial evidence to support a finding of lack of residence in Orange County on February 23, 1982.

Otherwise, the defendant argues that she was denied due process and a fair hearing "because of the trial court's reaction to the issues of credibility." Frankly, we have difficulty in following this argument. In our view, the credibility of the defendant was the key and decisive issue in the case. She had stated under oath as of February 23, 1982, that she was on that date a resident of Orange County. The issue of fact was whether she had made that statement falsely. In her opening brief, at page 23, defendant states, "Here there is evidence that the trial court was so disturbed by its feelings concerning the credibility of Judge Harrold arising from the quitclaim deed to Via Lido Soud residence and her statement of residence in her application to the Governor, [that it] was unable to objectively view the evidence of residence." This is a remarkable contention, remarkable in its absurdity. It amounts to saying that the court should disregard the damaging evidence on this issue and, if it does not, that it is not being "objective." Stating the true import of the argument demonstrates its puerile nature.

■ Defendant next assigns as error the failure of the trial court to issue a statement of decision before judgment was entered. After the judgment had been entered and the notice of appeal filed, such a statement was filed.

On the basis of the whole record, the sequence of what happened was not prejudicial. The record shows that on August 4, 1982, the court in the presence of all parties, including defendant and her attorney, read from the bench the reasons for rendering his decision. These have already been quoted in their entirety. The court's order was filed the same date. The minute order of that date reflects that contestants' counsel was requested to prepare the judgment. The minutes do not indicate that counsel for defendant either objected to the preparation of the judgment thus ordered or requested a statement of the decision. Two days later the consolidated judgment was filed. A minute order of the same day reflects that defendant through her attorney moved to stay the judgment pending appeal.

Before discussing events happening after the filing of the judgment it is appropriate to observe that in all likelihood the trial court, mindful of the time constraints imposed by Elections Code section 20339, then justifiably believed that his order, containing a complete exposition of his decision and the factual

basis for it, sufficiently constituted the findings and conclusions required by section 20338. Similarly, it is reasonable to assume that the court's expeditious issuance of its judgment two days after conclusion of the actual trial represented a further attempt to make it possible for defendant to comply with the manifestly unreasonable schedule imposed by section 20339. Further, it is clear that the schedule established by Code of Civil Procedure section 632 and rule 232, California Rules of Court, for preparation and filing of a statement of decision is incompatible with that imposed by section 20339, and it is arguable therefore that section 20338 takes precedence over Code of Civil Procedure section 632.

The fact that we have come to construe the contest as directed at a general election does not serve to color what the trial court did as error. The key here is that defendant was in no way prejudiced by what occurred. On August 12, eight days after the defendant's counsel had been informed in considerable detail by the oral recital on August 4 of the court's findings of fact and the evidentiary basis for them, defendant's counsel filed separate requests for a statement of decision in Dutcher v. Harrold (Super. Ct. Orange Co., No. 381599) and Pierce v. Harrold (Super. Ct. Orange Co., No. 381600). These requests, of just over a page each, contained nine and four questions, respectively. On August 18, a proposed statement of decision, signed by the court, was filed and mailed to both defendant's attorneys, together with a copy of a minute order requesting their presence at an August 23 hearing on the proposed statement. Mailing was evidenced by a certificate of service by mail. Following the hearing on August 23, the proposed statement was adopted as the court's statement of decision.

It is clear from the foregoing account of the events preceding the issuance of the statement of decision that defendant through counsel had ample opportunity to participate in its preparation. It is equally clear that defendant's interests were in no way prejudiced by the sequence employed.

Actually, there is little if any dispute in the record over the observable, extrinsic events. The dispute is over how those events shall be construed as ultimate fact, i.e., residency or no. We do not see how defendant's arguments to us would have been different or in any way improved if there had been a statement of decision and findings before the judgment.

■ By way of supplemental brief, defendant argues that she really did not commit the offense proscribed by section 29303 of the Elections Code, because there was no false representation of a *material* fact. Stated otherwise in defendant's words, "Appellant believes that Election [*sic*] Code Section 29303 is a specific statute which is intended to prevent perjury in a specific context. (See Legislative Committee comments to Section 29303, Deering's Election Code p. 541). As such, the statute of necessity includes an element of materiality. Representations which are untrue but immaterial do not violate the statute."

Defendant then proceeds to argue that her statements concerning residence were immaterial. Her rationale for this assertion lies in *People* v. *Chessman* (1959) 52 Cal.2d 467 [341 P.2d 679] (overruled on other grounds, *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]), which defendant cites for the proposition that Government Code section 71140 which imposes a *residence* requirement as a condition for holding the office of municipal court judge is unconstitutional. Proceeding from this authority, defendant states, "If residency is unconstitutional, as noted above, then there appears to be no materiality to the statements regarding residency on Judge Harrold's declaration of candidacy."

Our first reaction to this somewhat beguiling argument, if as a legal proposition defendant's residence did not affect her *eligibility* for office, is to wonder why she did not truthfully state the fact of her residence in Riverside County on February 23, 1982. In other words, if the proposition here urged is valid, for defendant to have been truthful about her residence would have represented a forthright and commendable position to take.

However, she did not, and it is obvious to us that the falsity of the declaration was *highly material*. Even accepting that the Legislature may not impose conditions for elective office in excess of any constitutional provisions, it is too plain to require extensive confirmation that the electors in any election, especially a judicial election, are highly interested in knowing the true fact of a candidate's place of residence as such. The voters of the West Orange County Judicial District were entitled to a truthful statement from the defendant on where she actually lived at the time of her declaration of candidacy regardless of whether such residence was a condition for her taking office. They did not receive such a statement, and therein lies the gravamen of defendant's offense against the elective franchise.

■ Finally, defendant argues vigorously against the court's order which called for an election on November 2, 1982, to fill the vacancy created by the nullification of her election. The short answer to such argument is that she had and continues to have no justiciable interest in the order calling for the November 2, 1982 election. Had she succeeded on this appeal, her certificate of election issued back in June would have overridden any results of the November 2, 1982, election. On the other hand, now that her election to the office has been adjudged a nullity, she has no interest as a candidate to protect as a basis for challenging that portion of the court's order.

■ Addressing the propriety of the court's order in prescribing an election on November 2, 1982, between Mr. Nix and Mr. Dutcher, we note that defendant, aside from her position as a candidate, argues that the trial court had no jurisdiction to do what it did. Section 6612 of the Elections Code provides that

"If no candidate has been elected to a nonpartisan office pursuant to Section 6611 or if the number of candidates elected at the primary election is less than the total number to be elected to that office, then candidates for that office at the ensuing election shall be those candidates not elected at the primary who received the next highest number of votes cast for nomination to that office, equal in number to twice the number remaining to be elected to that office, or less, if the total number of candidates not elected is less." Passing for now the beginning dependent clause of the statutory language, the remainder of the section plainly states that the "candidates for that office at the ensuing election shall be those candidates not elected at the primary who received the next highest number of votes cast for nomination to that office . . . ." Applied to the election here under scrutiny, that yields the inescapable result that Mr. Nix and Mr. Dutcher were to be the candidates at the ensuing election. This follows, for they were not elected at the primary, and they received the next highest number of votes cast.

The dispositive question then turns on the application of the initial language, "If no candidate has been elected to a nonpartisan office pursuant to Section 6611 . . . ." That section has two paragraphs. In pertinent part, the first paragraph provides that "Any candidate for a nonpartisan office who at a primary election receives votes on a majority of all the ballots cast for candidates for that office shall be elected to such office." In applying that section it necessarily follows that "candidate" must be construed broadly to contemplate the consequences of an election contest. Moreover, if the result of such a contest demonstrates, as here, that the election is a *nullity,* the legal consequence is the same as though the person challenged had never been a candidate. That is what "nullity" means in a variety of legal contexts. Accordingly, it can be properly observed, in view of what we have decided earlier, that no candidate received a majority of the votes cast for the office here involved.

The second paragraph of section 6611 provides that "Where a candidate has been elected to a nonpartisan office at the primary election, that office shall not appear on the ballot at the ensuing general election, notwithstanding the death, resignation or other disqualification of the candidate at a time subsequent to the primary election." Following the same reasoning as relied on above, we hold that no candidate was elected at the primary, and so the second paragraph likewise has no application to the facts before us.

In view of this analysis which has determined that no facts in this record called into operation section 6611, the result is that section 6612 controls. Moreover, this result would have been enjoined upon the election officials in Orange County whether the trial court had made its order or not. The structure of the ballot for this office for use in the November 2, 1982, General Election was dictated by section 6612 of the Elections Code, and the order of the trial

court served only to clarify the matter rather than itself to prescribe such structure. Stated otherwise, if the court had not made an order with reference to the ensuing electon, either Mr. Nix or Mr. Dutcher or both could have successfully obtained a writ of mandate compelling the election officials of Orange County to prepare the ballot for this office precisely as it was actually prepared.

Finally, we see no inconsistency in applying section 6612, a provision dealing with direct primaries, to resolve the issue of how the office was to be filled, when otherwise we approached the nullity issue as though we were dealing with a general election. We followed the course we did as a matter of orderly analysis. In the first instance, it appeared that defendant had been elected, and so as of that point in time we were colorably dealing with a general election. However, when it turned out that defendant's election was in fact and in law a nullity, the posture of the case reverted to that of a primary election.

It has been suggested that defendant's disqualification extended only to the 1982 primary and that she was not "disqualified" to run at some later election, e.g., the November 2, 1982, General Election. That notion may well apply if she chooses to run again in 1988, but there is no way she could have qualified as a candidate for the November 2, 1982, General Election. This obtains, for her violation of section 29303 would have operated to render her election there a nullity should a run-off between her and Mr. Dutcher, say, have been called for under a different scenario of votes cast. We conclude thusly, for the entire procedure starts with a declaration of candidacy, and the statutory procedure does not contemplate a second declaration of candidacy for the general election for those persons who for any reason are eliminated at the primary.

By order of October 19, 1982, we reserved a ruling on defendant's motion that we make certain findings. Because of the holdings we have made and the reasons for them, such findings are unnecessary.

### DISPOSITION

The judgment is affirmed, and the motion for findings per Code of Civil Procedure section 909 is denied.

Kaufman, Acting P. J., and Trotter, J., concurred.

A petition for a rehearing was denied December 21, 1982, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1983. Bird, C. J., was of the opinion that the petition should be granted.